# EXHIBIT 1

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.



## COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

JOHN E GROVE

vs.

MML INVESTORS SERVICES LLC

NO.  2025-02181

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Bucks County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:    ANDREW D COTLAR, ESQ., ID: 204630

Self-Represented (Pro Se) Litigant  [ ]

**Class Action Suit**    [ ] Yes    [X] No

**MDJ Appeal**    [ ] Yes    [X] No        **Money Damages Requested** [X]

**Commencement of Action**:        **Amount in Controversy**:

Complaint        More than $50,000

## Case Type and Code

Professional Liability:

Other Professional

**Other:**    FINANCIAL INVESTMENT LIABILITY

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

| | |
|---|---|
| John E. Grove,<br>                 *Plaintiff*<br>   VS.<br><br>MML Investors Services LLC,<br>and Massachusetts Mutual Life Insurance<br>Company<br>                 *Defendant* | : NO. _____<br>:<br>:<br>:<br>:<br>: CIVIL ACTION – LAW<br>:<br>:<br>:<br>: |

---

### NOTICE TO DEFEND

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

       **Bucks County Bar Association**
       **135 East State Street**
       **Doylestown, PA  18901**
       **(215) 348-9413 or 1-800-273-2929**

*Andrew Cotlar*

**Andrew D. Cotlar**
**Attorney for Plaintiffs**
**23 W. Court Street**
**Doylestown, PA 18901**
**(215)  345-7310**

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

**Law Office of Cotlar & Cotlar**
**Andrew D. Cotlar, Esq. /Attorney I.D. #204630**
**23 West Court Street**
**Doylestown, PA 18901**
**(215)-345-7310**

*Attorney for Plaintiff*

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**CIVIL ACTION - LAW**

| | |
|---|---|
| **John E. Grove,** | : **NO. _____** |
| *Plaintiff* | : |
| **VS.** | : |
| | : |
| **MML Investors Services LLC,** | : **CIVIL ACTION – LAW** |
| **and Massachusetts Mutual Life Insurance** | : |
| **Company** | : |
| *Defendant* | : |
| | : |

## COMPLAINT

Plaintiff by and through his attorney, Andrew D. Cotlar, Esquire, files the within Complaint and in support thereof aver the following.

1. Plaintiff, John E. Grove, is an adult individual who resides at 2560 Willow Stream Drive, Quakertown, PA 18951.

2. Defendant, MML Investors Services, LLC is a Pennsylvania limited liability company with principal offices located at 3701 Corporate Parkway, Suite 320, Center Valley, Pennsylvania, 18034 and 220 Gibraltar Road, Suite 350, Horsham, Pennsylvania 19044-2306.

3. Upon information and belief, Defendant MML Investors Services, LLC is a wholly owned subsidiary of Massachusetts Mutual Life Insurance Company, which has an address at 1295 State St., C410, Springfield, MA, 01111 and at all times acted in concert with and at the direction of and as agent of Defendant  Massachusetts Mutual Life Insurance Company.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

4.  MML Investors Services, LLC has been subject to fines levied by FINRA[1] and the

Commonwealth of Massachusetts for failure to set up and maintain sufficient supervisory

systems designed to oversee the recommendations of registered representatives and failure to

supervise its agents.

5.  John E. Grove, purchased a MetLife Flexible Premium Multifunded Life Insurance Policy,

account ████ 6 197 UM,  through Tom Weiss in Baltimore, Maryland, as agent for MetLife

on May 24, 1994.  A copy of the policy and paperwork documenting the initial investment is

attached hereto at EXHIBIT A and is incorporated herein by reference.

6.  When the policy originated, Mr. Grove transferred $24,000 to the new policy and thereafter

paid $170 per month for 30.5 years as a premium through January of this year, totaling $170

x  426 months or $72,420.00.

7.  Mr. Grove's total investment was therefore $96,420.00.

8.  Unfortunately, this investment has completely evaporated, because on January 24, 2025, Mr.

Grove was informed by letter from Met Life, which manages Defendants' investments, that

his account's cash value had plummeted to $336.12, due to no fault of his own, and that

failure to pay an additional $6,643.08 would result in the termination of his policy.  A copy

of said letter is attached hereto at EXHIBIT B and is incorporated herein by reference.

9.  A Flexible Premium Multifunded Life Insurance Policy is a variety of Universal Life policy

that was popular at the time and that only makes economic sense to the policy holder if they

are able to make payments that offset the investment costs and losses experienced by MetLife

---

1  FINRA, or the Financial Industry Regulatory Authority, is a
private American corporation acting as a self-regulatory
organization that regulates member brokerage firms and exchange
markets.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

over the policy lifetime.

10. Although Mr. Grove was informed about the nature of this investment vehicle at the time he paid for it in 1994, standard industry protocol and industry ethics codes mandate that the utility of such an investment over time should have been evaluated each year so that Mr. Grove would not experience the financial loss he did.

11. As an initial matter, the initial investment allocation was quite aggressive, as follows:40% growth, 20% diversified, 20% aggressive, 20% international stocks.  See Supplement II to Part A of the Policy.

12. Upon information and belief, the allocation of risk in investments never changed significantly.

13. And initially, at signing, the agent, Mr. Weiss, certified that the policy as being suitable for the purpose for which it was being purchased.

14. At some unknown point, this account was transferred to MML Investor Services, LLC, in care of its employee-agent Savaz Saymaz.

15.  Industry protocol and industry ethics standards establish that MML and Saymaz had a duty to conduct an annual review and provide notice to Plaintiff of the potential for the possibility of financial loss.

16. This duty can be found or implied in a number of sources, including the code of ethics from MetLife that is in its contract with Defendant and other industry governing bodies.

17. Further, to the extent that Defendant is a series 6 licensee, or a PA Series 6 licensee, there is a code of ethics that derives from the state securities commission.

18. To save the premium, Defendant could have recommended either (a) a lowered death benefit (of $125,000 for example) or (b) payment of higher premiums earlier in the course of the

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

policy lifetime, or (c) a different, more suitable investment vehicle entirely.

19. Instead, Defendant did nothing and never contacted Plaintiff concerning the decreasing value of his investment, simply pocketing the premiums and presumably being paid a yearly renewal commission to service the policy and likely a commission on the premiums paid.

20. Mr. Grove has never met with Defendant, nor has he received any communications requesting a yearly meeting to evaluate the propriety of his policy.

21. While he did occasionally receive reports from MetLife directly, these were not provided to him yearly, and certainly, no consultation was ever recommended.

22. As a direct and proximate result of Defendants' actions, Plaintiff lost the sum of $96,420.00.

## COUNT I
## PROFESSIONAL NEGLIGENCE

23. Plaintiff incorporates the foregoing paragraphs as if more fully set forth at length.

24. Defendants had a professional duty to evaluate Plaintiff's investment on a yearly basis, and consult with Plaintiff concerning investment goals and the means to accomplish those goals, as aforesaid, consistent with ethical norms and industry standards for investment professionals.

25. Defendants breached this duty by not contacting Plaintiff at all, let alone holding any meetings with Plaintiff consistent with ethical norms and industry standards for investment professionals.

26. As a direct and proximate result of Defendants' actions, Plaintiff lost the sum of $96,420.00.

WHEREFORE Plaintiff demands judgment against Defendants in the amount of $96,420.00 and statutory interest from the date of breach.

Case# 2025-02181-0 - JUDGE 39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## COUNT II
## BREACH OF FIDUCIARY DUTY

27. Plaintiff incorporates the foregoing paragraphs as if more fully set forth at length.

28. Defendants were in the position of a fiduciary with regard to Plaintiff, whereby he provided Defendants with investment funds for the purpose of a life insurance policy, relying upon Defendants' professional advice to do so.

29. Defendants, acting as agent for Plaintiff, acted for and on behalf of Plaintiff, whose interests conflicted with Defendants. See Reading Radio, Inc. v. Molly S. Fink, et. al., 2003 Pa. Super 353, 33, 833 A.2d 199 (Pa. Super. 2003), citing Restatement (second)of Agency 394 (1958).

30. A "confidential relationship" existed between Plaintiff and Defendants, insofar as Plaintiff placed a high degree of trust in Defendants' investment acumen and relied thereon.

31. Defendants breached their fiduciary duty toward Plaintiff by not contacting Plaintiff at all, let alone holding any meetings with Plaintiff consistent with ethical norms and industry standards for investment professionals to evaluate the appropriateness of the investment for its purpose on a yearly basis.

32 .        As a direct and proximate result of Defendants' actions, Plaintiff lost the sum of $96,420.00.

WHEREFORE Plaintiff demands judgment against Defendants in the amount of $96,420.00 and statutory interest from the date of breach.

## COUNT III
## CONCERTED TORTIOUS ACTION

33. Plaintiff incorporates the foregoing paragraphs as if more fully set forth at length.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

34. Concerted tortious action, which is a recognized cause of action in Pennsylvania, requires a showing that two parties act in concert with each other or pursuant to a common design, or knows that the others' conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other, or gives substantial assistance to the other in accomplishig a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.   Section 876 of the Restatement (Second) of Torts.  Hranec Sheet Metal, Inc. v. Metalico Pittsburgh Inc., 2014 PA Super 278 (Pa. Super. Ct. 2014), Marion v. Bryn Mawr Trust Co., 2021 Pa. Super. 18 (Pa. Super. 2021).

35. No actual knowledge of the fraud required:  "a defendant's actual knowledge of the underlying tort is not necessary to sustain a cause of action under §876(b).  Rather, if the defendant knew or should have known of the underlying bad actor's misdeeds, but instead exhibited intentional ignorance … the knowledge element … is satisfied.")  Marion, supra. at 16.

36. Defendant MML engaged in  tortious negligence  by not contacting Plaintiff at all, let alone holding any meetings with Plaintiff consistent with ethical norms and industry standards for investment professionals to evaluate the appropriateness of the investment for its purpose on a yearly basis.

37. Defendant Massachusetts Mutual Life Insurance Company engaged in concerted tortious negligence, insofar as MML was its wholly owned subsidiary and is therefore responsible for the actions of its agent or subordinate, acting is it did in concert with its subordinate; or insofar as it knew or should have known of MML's breach; or insofar as its own action or inaction constituted a breach.

WHEREFORE Plaintiff demands judgment against Defendants in the amount of $96,420.00 and statutory interest from the date of breach.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of
the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## COUNT IV
## VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

38. Plaintiff incorporates the foregoing paragraphs as if more fully set forth at length.

39. Plaintiff purchased investment services from Defendants "primarily for personal, family or household purposes." 73 P.S. § 201-9.2.

40. Defendant violated the Unfair Trade Practices and Consumer Protection Law by: (xxi) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

41. The Pennsylvania Supreme Court has determined that this "catch-all" provision prohibiting "fraudulent or deceptive conduct" is a strict liability statute and does not require a demonstration of fraud or negligence or even intent to deceive. See Gregg v. Ameriprise Fin., Inc., 2018 Pa. Super. LEXIS 1009, *17, 20-21, 2018 Pa Super 252 (Pa. Super 2018), aff'd 2021 Pa. LEXIS 608 (Pa. 2021).

42. As a direct and proximate result of Defendants' breach, Plaintiff lost the sum of $96,420.00.

WHEREFORE Plaintiffs respectfully request that pursuant to The Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-9.2, this Court award Plaintiffs up to three times actual damages, i.e. $289,260, as well as all Attorney's fees and costs.

Respectfully Submitted,

*Andrew Cotlar*

Andrew D. Cotlar, Esq. / Attorney I.D. #204630
Law Office of Cotlar & Cotlar

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

Attorneys for Plaintiff
23 West Court Street
Doylestown, PA  18901
(215) 345-7310

### VERIFICATION

I, John E. Grove, verify that the statements made in the foregoing document are
true and correct to the best of my knowledge, information and belief.  I understand
that false statements therein are subject to the penalties set forth in 18 Pa. C.S.
Section 4904 relating to unsworn falsification to authorities.


John E. Grove

EXHIBIT A

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

BR/AGY B16 087    **MetLife**

# Metropolitan Life Insurance Company

A Mutual Company Incorporated in New York State

Metropolitan Life Insurance Company will pay the amount of insurance and provide the other benefits of this policy according to its provisions.

Joseph A. Reali
Vice-President and Secretary

Ted Athanassiades
President and Chief Operating Officer

| | |
|---|---|
| Insured | **JOHN E GROVE** |
| Face Amount of Insurance | $250,000    AS OF MAY 24, 1994 |
| Policy Number | ███ 6 197 UM |

## Flexible Premium Multifunded Life Insurance Policy

Life insurance payable if the insured dies before the Final Date of Policy.

Cash Value, if any,  less any policy loan and loan interest, payable on the Final Date. Adjustable death benefit.

Premiums payable while the insured is alive and before the Final Date of Policy.

Premiums must be sufficient to keep the policy in force.

Not eligible for dividends.

**THE CASH VALUE IN EACH INVESTMENT DIVISION OF THE SEPARATE ACCOUNT IS BASED ON THE INVESTMENT EXPERIENCE OF THAT INVESTMENT DIVISION AND MAY INCREASE OR DECREASE DAILY. IT IS NOT GUARANTEED AS TO DOLLAR AMOUNT. SEE THE SEPARATE ACCOUNT PROVISION ON PAGE 11.**

**The cash value in the Fixed Account will be credited with interest at a guaranteed rate of 4% a year. We may credit additional  interest  in excess of the guaranteed rate. See the Fixed Account provision on page 9.**

**THE   AMOUNT OR THE DURATION OF THE DEATH BENEFIT, OR BOTH, MAY BE VARIABLE OR FIXED AND DEPEND UPON THE AMOUNT OF THE CASH VALUE.**

**Right to Examine Policy--Please read this policy. You may return this policy to us or to the account representative through whom you bought it within 20 days from the date you  receive it or within 45 days after the application is signed, whichever period ends later. If you  return it within this period, the policy will be void from the beginning. We will refund any premium paid.**

See Table of Contents and Company address on the last page.

**READ THIS POLICY CAREFULLY.**  This policy is a legal contract between the policy owner and Metropolitan Life Insurance Company.

6 FM-90

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
Filed by: ANDREW COTLAR

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

METROPOLITAN LIFE INSURANCE COMPANY

POLICY SPECIFICATIONS

DATE OF POLICY . . . . . . . . . . . . . MAY 24,1994

INSURED'S AGE AND SEX  . . . . . . . . . 56 MALE

FINAL DATE OF POLICY . . . . . . . . . . POLICY ANNIVERSARY AT AGE 95

DEATH BENEFIT  . . . . . . . . . . . . . OPTION A  (SEE PAGE 7)

OWNER . . . . . . . . . . . . . . . . . JOHN E GROVE

BENEFICIARY  . . . . . . . . . . . . . . SEE APPLICATION

CONTINGENT BENEFICIARY . . . . . . . . . SEE APPLICATION


POLICY CLASSIFICATION  . . . . . . . . . PREFERRED - NONSMOKER



INSURED

JOHN E GROVE

SPECIFIED
FACE AMOUNT
OF INSURANCE      $250,000-AS OF DATE OF POLICY      ████ 6197UM . POLICY NUMBER

PLAN  . . . . . . FLEXIBLE PREMIUM MULTIFUNDED LIFE      B16    087


INITIAL ALLOCATION OF NET PREMIUM

| FIXED ACCOUNT | % | SEPARATE ACCT DIVS. | GROWTH DIVERSIFIED | 40% 20% | INCOME STOCK INDEX | % % | MONEY MARKET EQUITY INCOME | % % |
| | | INT'L STOCK | 20% | | | | AGGRESSIVE GROWTH | 20% |

THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF
SUFFICIENT PREMIUMS ARE PAID.  PREMIUM PAYMENTS IN ADDITION TO THE
PLANNED PREMIUM SHOWN BELOW MAY NEED TO BE MADE TO KEEP THIS POLICY
AND COVERAGE IN FORCE.

PLANNED PREMIUM OF    $390.00-PAYABLE CHECK-O-MATIC
MINIMUM ALLOWABLE FIRST YEAR PREMIUM  $4,665.00
GUIDELINE ANNUAL PREMIUM              $8,786.28

(TOTAL PREMIUM FOR LIFE INSURANCE BENEFIT, ANY SUPPLEMENTAL RATING
AND ANY ADDITIONAL BENEFITS LISTED BELOW)

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

POLICY SPECIFICATIONS (CONTINUED)

GUARANTEED INTEREST RATE FOR FIXED ACCOUNT................................................4% A YEAR

INTEREST RATE ON FIRST $1,000 IN THE FIXED ACCOUNT........................................4% A YEAR

BASE ADMINISTRATION
CHARGE .................................   DURING THE FIRST TWELVE POLICY MONTHS $.25 PER THOUSAND
                                         DOLLARS OF SPECIFIED FACE AMOUNT OF INSURANCE PLUS
                                         $5 PER MONTH AT ISSUE AGES LESS THAN EIGHTEEN
                                         $15 PER MONTH AT ISSUE AGES EIGHTEEN TO FORTY-NINE
                                         $20 PER MONTH AT ISSUE AGES FIFTY AND ABOVE

                                         AFTER THE FIRST TWELVE POLICY MONTHS
                                         $5 PER MONTH IF SPECIFIED FACE AMOUNT OF INSURANCE IS
                                            $250,000 OR MORE
                                         $7 PER MONTH IF SPECIFIED FACE AMOUNT OF INSURANCE IS
                                            $100,000 TO $249,999
                                         $9 PER MONTH IF SPECIFIED FACE AMOUNT OF INSURANCE IS
                                            LESS THAN $100,000.

TRANSFER CHARGE .................   $25

SURRENDER CHARGE ............   SEE PAGE 14

NET PREMIUMS ....................   94.5% OF PREMIUMS RECEIVED. THE DEDUCTION FROM EACH
                                         PREMIUM PAYMENT IS A SALES CHARGE AND TAX CHARGE.
                                         THE NET PREMIUM IS ALLOCATED BY YOU TO EITHER THE FIXED
                                         ACCOUNT, THE SEPARATE ACCOUNT, OR A COMBINATION OF
BOTH.

SPECIFIED FACE
AMOUNT LIMITS ..................   YOU MAY NOT REDUCE YOUR SPECIFIED FACE AMOUNT OF
                                         INSURANCE TO LESS THAN $100,000 FOR THE FIRST 5 POLICY
                                         YEARS OR TO LESS THAN $50,000 AFTER THE 5TH POLICY YEAR.

7FM-9003.1 PR   (92)                         3.1                                    AAABVI

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

### Table of Guaranteed Maximum Rates For Each $1,000 of Term Insurance
### (See "Cost of Term Insurance" Provision on Page 9. )

| Age | Monthly Rate* | | Age | Monthly Rate* | |
|---|---|---|---|---|---|
| | Male | Female | | Male | Female |
| 0 | .219 | .157 | 48 | .499 | .374 |
| 1 | .086 | .070 | 49 | .540 | .400 |
| 2 | .083 | .067 | 50 | .585 | .429 |
| 3 | .081 | .065 | 51 | .638 | .459 |
| 4 | .078 | .064 | 52 | .697 | .495 |
| 5 | .073 | .063 | 53 | .764 | .533 |
| 6 | .069 | .061 | 54 | .838 | .573 |
| 7 | .065 | .059 | 55 | .918 | .613 |
| 8 | .063 | .058 | 56 | 1.003 | .652 |
| 9 | .062 | .058 | 57 | 1.093 | .690 |
| 10 | .063 | .057 | 58 | 1.189 | .728 |
| 11 | .068 | .058 | 59 | 1.294 | .770 |
| 12 | .077 | .061 | 60 | 1.411 | .820 |
| 13 | .089 | .064 | 61 | 1.543 | .883 |
| 14 | .103 | .068 | 62 | 1.692 | .963 |
| 15 | .118 | .073 | 63 | 1.860 | 1.059 |
| 16 | .133 | .077 | 64 | 2.045 | 1.167 |
| 17 | .143 | .080 | 65 | 2.246 | 1.283 |
| 18 | .152 | .083 | 66 | 2.461 | 1.403 |
| 19 | .157 | .086 | 67 | 2.689 | 1.524 |
| 20 | .158 | .088 | 68 | 2.934 | 1.647 |
| 21 | .158 | .090 | 69 | 3.207 | 1.787 |
| 22 | .157 | .092 | 70 | 3.515 | 1.951 |
| 23 | .153 | .093 | 71 | 3.867 | 2.153 |
| 24 | .150 | .096 | 72 | 4.272 | 2.404 |
| 25 | .146 | .098 | 73 | 4.733 | 2.706 |
| 26 | .143 | .100 | 74 | 5.240 | 3.055 |
| 27 | .143 | .103 | 75 | 5.785 | 3.445 |
| 28 | .142 | .107 | 76 | 6.359 | 3.869 |
| 29 | .143 | .110 | 77 | 6.958 | 4.325 |
| 30 | .146 | .114 | 78 | 7.585 | 4.819 |
| 31 | .150 | .118 | 79 | 8.262 | 5.370 |
| 32 | .156 | .123 | 80 | 9.012 | 6.000 |
| 33 | .163 | .128 | 81 | 9.958 | 6.729 |
| 34 | .171 | .134 | 82 | 10.822 | 7.579 |
| 35 | .181 | .142 | 83 | 11.902 | 8.549 |
| 36 | .194 | .152 | 84 | 13.077 | 9.629 |
| 37 | .208 | .163 | 85 | 14.325 | 10.811 |
| 38 | .224 | .178 | 86 | 15.626 | 12.091 |
| 39 | .242 | .194 | 87 | 16.976 | 13.469 |
| 40 | .263 | .211 | 88 | 18.375 | 14.952 |
| 41 | .285 | .229 | 89 | 19.834 | 16.556 |
| 42 | .310 | .249 | 90 | 21.379 | 18.306 |
| 43 | .336 | .267 | 91 | 23.052 | 20.250 |
| 44 | .365 | .287 | 92 | 24.937 | 22.470 |
| 45 | .395 | .307 | 93 | 27.244 | 25.155 |
| 46 | .428 | .327 | 94 | 30.445 | 28.736 |
| 47 | .462 | .350 | | | |

* If there is a supplemental rating for the life insurance benefit, as shown on page 3, the monthly deduction for such supplemental rating must be added to the monthly rate determined from this table.

7FM-04   A

AAABH1

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Description of Investment Divisions in the Separate Account

THE ASSETS IN EACH INVESTMENT DIVISION OF METROPOLITAN LIFE SEPARATE ACCOUNT UL (SEPARATE ACCOUNT) ARE INVESTED IN SHARES OF A DESIGNATED INVESTMENT COMPANY PORTFOLIO. EACH PORTFOLIO REPRESENTS A DIFFERENT CLASS (OR SERIES) OF SHARES ISSUED BY METROPOLITAN SERIES FUND, INC.

DIVISION 1-- GROWTH PORTFOLIO--The investment objective of this portfolio is to achieve long-term growth of capital and income, and moderate current income, by investing primarily in common stocks that are believed to be of good quality or to have good growth potential or which are considered to be undervalued based on historical investment standards.

DIVISION 2-- INCOME PORTFOLIO--The investment objective of this portfolio is to achieve the highest possible total return, by combining current income with capital gains, consistent with prudent investment risk and the preservation of capital, by investing primarily in fixed-income, high-quality debt securities.

DIVISION 3-- MONEY MARKET PORTFOLIO--The investment objective of this portfolio is to achieve the highest possible current income consistent with the preservation of capital and maintenance of liquidity, by investing primarily in short-term money market instruments.

DIVISION 4-- DIVERSIFIED PORTFOLIO--The investment objective of this portfolio is to achieve a high total return while attempting to limit investment risk and preserve capital by investing in equity securities, fixed-income debt securities, or short-term money market instruments, or any combination thereof, at the discretion of State Street Research.

DIVISION 5-- AGGRESSIVE GROWTH PORTFOLIO--The investment objective of this portfolio is to achieve maximum capital appreciation by investing primarily in common stocks (and equity and debt securities convertible into or carrying the right to acquire common stocks) of emerging growth companies, undervalued securities or special situations.

DIVISION 6-- INTERNATIONAL STOCK PORTFOLIO--The investment objective of this portfolio is to achieve long-term growth of capital by investing primarily in common stocks and equity-related securities of non-United States companies.

DIVISION 7-- STOCK INDEX PORTFOLIO. The investment objective of this portfolio is to equal the performance of the Standard & Poor's 500 Composite Stock Price Index (adjusted to assume reinvestment of dividends) by investing in the common stock of companies which are included in the index.

INVESTMENT RETURNS WILL REFLECT FLUCTUATIONS IN THE MARKET VALUE OF SECURITIES. PLEASE REFER TO THE CURRENT PROSPECTUS FOR METROPOLITAN SERIES FUND, INC. FOR A COMPLETE DESCRIPTION OF THE FUND AND THE CURRENTLY AVAILABLE DESIGNATED PORTFOLIOS.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

# Definitions

This policy provides life insurance through flexible premium payments. Net Premiums are credited at your option to either a fixed interest account ("Fixed Account") or a multifunded separate account ("Separate Account") or both. Interest will be credited to the cash value in the Fixed Account. The cash value in the Separate Account will vary with investment experience. The cost of insurance and other charges will be deducted each month proportionately from the Fixed Account and the Separate Account.

To make this policy clear and easy to read, we have left out many cross-references and conditional statements. Therefore, the provisions of the policy must be read as a whole. For example, our payment of the insurance proceeds depends on the payment of sufficient premiums.

To exercise your rights, you should follow the procedures stated in this policy. If you want to request a payment, change the allocation of net premiums, adjust the death benefit, change a beneficiary, change an address or request any other action by us, you should do so on the forms prepared for each purpose. You can get these forms from your account representative or our Designated Office.

"You" and "your" refer to the owner of this policy.

"We", "us" and "our" refer to Metropolitan Life Insurance Company.

The "insured" named on page 3 is the person at whose death the insurance proceeds will be payable.

The "Specified Face Amount of Insurance" as of the date of policy is shown on page 3. A new page 3 will be issued to show any change in the Specified Face Amount of Insurance that occurs at your request.

The "Final Date of Policy" is the policy anniversary on which the insured is age 95.

Policy years and months are measured from the date of policy. For example, if the date of policy is May 5, 1999, the first policy month ends June 4, 1999, and the first policy year ends May 4, 2000. Also, the first monthly anniversary is June 5, 1999 and the first policy anniversary is May 5, 2000.

The "Designated Office" is the office to which your communications are to be sent. It is our Home Office at One Madison Avenue, New York, N.Y. 10010. We may, by written notice, name one or more other offices within the United States to serve as a Designated Office in place of the Home Office.

The "Investment Start Date" is the date the first premium is applied to the Fixed Account and/or Separate Account. It is the later of: (1) the Date of Policy; and (2) the date we receive the first premium at our Designated Office.

"Issue Age" is the age of the insured shown on page 3.

"Guideline Annual Premium" is the level annual amount of premium that would be payable through the Final Date of Policy for the specified face amount of the policy if premiums were fixed by us as to both timing and amount and were based on the 1980 Commissioners Standard Ordinary Mortality Tables, net investment earnings at an annual effective rate of 5%, and fees and charges as set forth in the policy and any policy riders.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Definitions (Continued)

"Fixed Account" is the account under the policy to which we will add the payments that you allocate to the Fixed Account. The Fixed Account is part of our general account.

"Separate Account" is Metropolitan Life Separate Account UL, the account under this policy to which we will add the payments that you allocate to any of the Investment Divisions in the Separate Account.

"Policy Loan Account" is the account to which we will transfer the amount of any policy loan from the Fixed and Separate Accounts.

"Cash Value" is the sum of: (a) the policy's cash value in the Fixed Account; (b) the policy's cash value in each investment division of the Separate Account; and (c) the policy's cash value in the Policy Loan Account.

"Cash Surrender Value" is the cash value less any policy loan and loan interest and any applicable surrender charge computed from the chart set forth on page 15 and, if the policy is surrendered in the first policy year, less the Base Administration Charge for each full policy month remaining to the end of the first policy year.

## Payment When Insured Dies

**Insurance Proceeds**

If the insured dies before the Final Date of Policy, an amount of money, called the insurance proceeds, will be paid to the beneficiary. The insurance proceeds are the sum of:

* The death benefit described below.

     PLUS

* Any insurance on the insured's life that may be provided by riders to this policy.

     MINUS

* Any policy loan and loan interest.

     MINUS

* Any due and unpaid monthly deductions accruing during a grace period.

We will pay the insurance proceeds to the beneficiary after receipt at our Designated Office of proof of death and a proper written claim.

**Death Benefit**

You must choose one of the following two death benefit options:

1. **Option A:**  The Specified Face Amount of Insurance.

2. **Option B:**  The Specified Face Amount of Insurance;

     PLUS

     The cash value on the date of death.

The death benefit will be the amount of the option in effect at the time of death or, if greater, the minimum death benefit described on page 8.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Payment When Insured Dies (Continued)

**Minimum Death Benefit**   In no event will the death benefit be less than the amounts described below:

| Age on Date of Death | Minimum Death Benefit as a Percentage of the Cash Value |
|---|---|
| 40 or younger | 250% |
| 41-45 | 243-215 |
| 46-50 | 209-185 |
| 51-55 | 178-150 |
| 56-60 | 146-130 |
| 61-65 | 128-120 |
| 66-70 | 119-115 |
| 71-75 | 113-105 |
| 76-90 | 105 |
| 91-95 | 104-100 |

The minimum death benefit will decrease uniformly within the age ranges shown.

**Death Benefit Adjustment**   At any time after the second policy year, while this policy is in force, you may change the death benefit option and change (either increase or decrease) the Specified Face Amount of Insurance, subject to the following:

1. In the event of a change in the death benefit option, we will change the Specified Face Amount of Insurance as follows:

   a. If you change from Option A to Option B, the Specified Face Amount of Insurance will be reduced by the then current cash value.

   b. If you change from Option B to Option A, the Specified Face Amount of Insurance will be increased by the then current cash value.

2. The Specified Face Amount of Insurance may not be reduced to less than the Specified Face Amount Limits shown on page 3.1, nor may it be reduced to a level where the total premiums already paid to date exceed the then current Internal Revenue Service limits relating to the definition of life insurance.

3. The Specified Face Amount of Insurance may not be increased after the insured reaches age 80. For any change at your request which would increase the death benefit, you must provide evidence satisfactory to us of the insurability of the insured. Each increase must be at least $5,000. Also, at the time of change there will be an underwriting charge of $5 for each $1,000 of insurance increase. This charge will be part of the monthly deduction as of the date the increase takes effect. New withdrawal charges will apply for 15 policy years after the increase.

4. No change in the death benefit will take effect unless the cash surrender value after the change is equal to at least two monthly deductions. A request for a change in the death benefit will take effect as of the monthly anniversary which coincides with or next follows: (a) if evidence of insurability is required, the date we approve the request, or (b) if not, the date of the request.

5. We will issue a new page 3 for this policy showing the change. We may require that you send us this policy to make any requested change.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Monthly Deduction

Each policy month, a deduction is made from the cash value to pay for the cost of insurance and administrative expenses. The monthly deduction is determined on each monthly anniversary, and is the sum of the following items:

1. The monthly cost of term insurance, as defined below.

2. The monthly cost of any benefits provided by riders.

3. A base administration charge as shown on page 3.1.

4. For any month in which your request results in an increase in the death benefit, an underwriting charge of $5.00 per thousand dollars of such increase.

The monthly deduction will be charged proportionately to the Fixed Account and each Investment Division of the Separate Account at the beginning of the policy month.

**Cost of Term Insurance**

The cost of the term insurance for any policy month is equal to the amount of term insurance multiplied by the monthly term insurance rate for each $1,000 of insurance. From time to time we will set monthly term insurance rates based on the insured's age, sex, and underwriting class. These rates will never be more than the maximum rates shown in the table on page 4. Any changes in mortality charges will not recoup past losses. Any adjustments in policy cost factors will be by class and based on changes in such factors as investment earnings, mortality, persistency and expenses.

The amount of term insurance for any policy month is equal to:

* The death benefit divided by 1.0032737;

    MINUS

* The Cash Value of the policy.

The cash value used in this calculation is determined at the start of the policy month before the deduction for the monthly cost of term insurance and for any Disability Waiver Benefit, but after the deduction for any other riders or charges.

## Fixed Account

**Value**

The policy's cash value in the Fixed Account on the Investment Start Date is equal to:

1. The portion of the initial net premium which has been paid and allocated to the Fixed Account;

    MINUS

2. The portion of the first monthly deduction charged to the Fixed Account.

Case# 2025-02181-0 – JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM. Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Fixed Account (Continued)

The policy's cash value in the Fixed Account on any day after the Investment Start Date is equal to:

1. The value on the preceding day, with interest on such value at the currently applicable rates;

PLUS

2. Any portion of net premium paid and allocated to the Fixed Account on that day;

PLUS

3. Any amount transferred to the Fixed Account on that day;

PLUS

4. Any loan repayments allocated to the Fixed Account on that day;

PLUS

5. That portion of any interest credited on outstanding loans which is allocated to the Fixed Account on that day;

MINUS

6. Any amount transferred from the Fixed Account to the Separate Account on that day;

MINUS

7. Any cash withdrawal made from the Fixed Account on that day;

MINUS

8. Any amount transferred from the Fixed Account to the Policy Loan Account on that day;

MINUS

9. The portion of any transfer charge allocated to the policy's cash value in the fixed account;

MINUS, IF THAT DAY IS A MONTHLY ANNIVERSARY,

10. The portion of the monthly deduction which is charged to the Fixed Account, to cover the policy month which starts on that day.

**Interest Rate**

The guaranteed interest rate for the Fixed Account is .01075% a day, compounded daily. This is equivalent to a rate of 4% a year compounded annually.

We may declare rates of interest in excess of the 4% guaranteed rate on amounts in excess of $1,000 in the Fixed Account at any time, subject to the following conditions: the rate of excess interest on any net premiums paid during a month of the year will not decrease before the first day of the same month of the subsequent year; thereafter, the rate of excess interest will not decrease for a period of twelve months from the date declared. We also may credit different rates of excess interest to premium payments made in different months of the year and different rates of excess interest at the end of each twelve-month period for cash value related to premiums received in a given month of each prior year. Transfers made into the Fixed Account will be treated as new premium payments for these purposes.

We will credit the guaranteed and any excess interest on every Valuation Date. Once credited, that interest will be guaranteed and will become part of the policy's cash value in the Fixed Account from which monthly deductions are made. The monthly deduction will be charged against the most recent premiums paid (and transfers made) and interest credited thereto.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Separate Account

Separate Account UL is an investment account established and maintained by us, separate from our general account or other separate investment accounts. It is used for flexible premium multifunded life insurance policies, and if permitted by law, may be used for other policies or contracts as well.

We own the assets in the Separate Account. Assets equal to the reserves and other liabilities of the Separate Account will not be charged with liabilities that arise from any other business we conduct. We may from time to time transfer to our general account assets in excess of such reserves and liabilities.

Income and realized and unrealized gains or losses from assets in the Separate Account are credited to or charged against the Separate Account without regard to our other income, gains or losses.

The Separate Account will be valued at the end of each Valuation Period but never less than monthly.

A "Valuation Date" is each day on which there is enough trading in a portfolio's securities that the current value of its shares could be materially affected. In general, Valuation Dates will be days when the New York Stock Exchange is open for trading. We reserve the right, on 30 days notice, to change the basis for such Valuation Date, as long as the basis is not inconsistent with applicable laws.

A "Valuation Period" is the period between successive Valuation Dates starting at 4:00 P.M. New York City time, on each Valuation Date and ending at 4:00 P.M., New York City time, on the next Valuation Date. We reserve the right, on 30 days notice, to change the basis for such Valuation Period, as long as the basis is not inconsistent with applicable laws.

**Investment Divisions**

The "Investment Divisions" are part of the Separate Account. Each division holds a separate class (or series) of stock of a designated investment company or companies. Each class of stock represents a separate portfolio in an investment company.

The Investment Divisions available on the Date of Policy are described on Page 5. Those you selected in the application are shown on Page 3. We may from time to time make other investment divisions available to you. We will provide you with written notice of all material details including investment objectives and all charges.

**Our Right to Make Changes**

We reserve the right to make certain changes if, in our judgment, they would best serve the interests of the owners of policies such as this one, or would be appropriate in carrying out the purposes of such policies. Any changes will be made only to the extent and in the manner permitted by applicable laws and with the approval of the insurance commissioner of our state of domicile, New York. The approval process is on file with the Commissioner. Also, when required by law, we will obtain your approval of the changes.

Example of the changes we may make include:

* To operate the Separate Account in any form permitted under the Investment Company Act of 1940, or in any other form permitted by law.

* To take any action necessary to comply with or obtain and continue any exemptions from the Investment Company Act of 1940.

7FM-11
PA,TX

AAABDR

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

## Separate Account (Continued)

* To transfer any assets in an Investment Division to another Investment Division, or to one or more separate accounts, or to our general account, or to add, combine, or remove Investment Divisions in the Separate Account.

* To substitute, for the investment company shares held in any Investment Division, the shares of another class of the investment company or the shares of another investment company or any other investment permitted by law.

* To change the way we assess charges, but without increasing the aggregate amount charged to the Fixed Account and any currently available investment division of the Separate Account or available portfolios of the fund.

* To make any other necessary technical changes in this policy in order to conform with any action this provision permits us to take.

If any of these changes result in a material change in the underlying investments of an Investment Division in the Separate Account, we will notify you of such change. If you have funds allocated to that division, you may then make a new choice of Investment Divisions.

**Index of Investment Experience**

We use an index to measure changes in each Investment Division's investment experience during a Valuation Period. We set the index at $10 when the Investment Division first began operations. The index for a current Valuation Period equals the index for the preceding Valuation Period multiplied by the experience factor for the current period.

The "experience factor" for a valuation period in each division is calculated as follows:

(1) We take the net asset value per investment company share at the end of the current valuation period. We add the per share amount of any dividend or capital gain distribution paid by the investment company during the current valuation period. We subtract any per share charge for our taxes and for any reserve for taxes.

(2) We divide (1) by the net asset value per investment company share at the end of the preceding valuation period.

(3) We subtract a charge of not more than .002454% for each day in the valuation period. This charge is to cover the expense and mortality risks that we are assuming and is equivalent to no more than 0.90% a year.

**Value**

The policy's cash value in the Separate Account is the sum of the cash values in each of the Investment Divisions.

The policy's cash value in each Investment Division of the Separate Account on the Investment Start Date is equal to:

1. The portion of the initial net premium which has been paid and is allocated to the Investment Division;

MINUS

2. The portion of the first monthly deduction which is charged to the Investment Division.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

## Separate Account (Continued)

The policy's cash value in each Investment Division on subsequent valuation dates is equal to:

1. The cash value in the Investment Division on the preceding Valuation Date multiplied by the experience factor for the current valuation period;

    PLUS

2. Any net premium payments received during the current valuation period which are allocated to the Investment Division;

    PLUS

3. Any net amounts transferred to the Investment Division from the Fixed Account or from another Investment Division during the current valuation period;

    PLUS

4. Any loan repayments allocated to the Investment Division during the current Valuation Period;

    PLUS

5. That portion of any interest credited on outstanding loans which is allocated to the Investment Division during the current valuation period;

    MINUS

6. Any amounts transferred from the Investment Division during the current valuation period;

    MINUS

7. Any cash withdrawal from the Investment Division during the current valuation period;

    MINUS

8. Any amount transferred from the Investment Division to the Policy Loan Account during that Valuation Period;

    MINUS

9. The portion of any transfer charge allocated to the policy's cash value in the Investment Division;

    MINUS, IF A MONTHLY ANNIVERSARY OCCURS DURING THE CURRENT VALUATION PERIOD,

10. The portion of the monthly deduction charged to the Investment Division during the current valuation period to cover the policy month which starts on that day.

## Owner's Right to Change Allocation

You can change the allocation of future net premiums among the Fixed Account and/or the Investment Divisions of the Separate Account. You must allocate at least 10% of net premiums to each alternative you choose. Percentages must be in whole numbers. (For example, 33 1/3% may not be chosen.) You must notify us in writing of a change in the allocation percentages. The change will take effect immediately upon receipt at our Designated Office.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Owner's Right to Change Allocation (Continued)

You may also change the allocation of the cash value. To do this, you may transfer amounts among the alternatives at any time. A transfer charge of $25 will be deducted from the cash value from which amounts are transferred on a pro-rata basis when each transfer is effected. However, no charge will be assessed for transfers from Policy loans and loan repayments. In addition, during the first 24 Policy months, no charge will be assessed for a complete transfer of all amounts in the investment divisions of the Separate Account to the Fixed Account. Transfers must be in either dollar amounts or a percentage in whole numbers. The minimum amount that may be transferred is $50, or, if less, the entire cash value in an Investment Division of the Separate Account or the entire cash value in the Fixed Account. The change will take effect on the date we receive written notice from you at our Designated Office. We will reflect the change in our calculations and in your annual report.

## Payments During Insured's Lifetime

**Payment on Final Date of Policy**

If the insured is alive on the Final Date of Policy, we will pay you the cash value minus any policy loan and loan interest. Coverage under this policy will then end.

**Full and Partial Cash Withdrawal**

We will pay you all or part of the cash surrender value after we receive your request at our Designated Office. The cash surrender value will be determined as of the date we receive your request. If you request and are paid the full cash surrender value, this policy and all our obligations under it will end. We may require surrender of this policy before we pay you the full cash surrender value.

Each partial cash withdrawal must be at least $250. When a cash withdrawal is made, we will reduce the cash value by the amount of the partial withdrawal. The withdrawal will be allocated proportionately among the Fixed Account and each Investment Division of the Separate Account.

If Death Benefit Option A is in effect, we will also reduce the Specified Face Amount of Insurance by the amount of the partial withdrawal, and a new page 3 will then be issued. We may require that you send us this policy to make the change. Partial cash withdrawals will not affect the Specified Face Amount of Insurance if Option B is in effect.

A partial withdrawal which would reduce the cash surrender value to less than two monthly deductions may not be made. Also, if Option A is in effect, a partial withdrawal may not be made if it would reduce the Specified Face Amount of Insurance to less than the Specified Face Amount Limits on page 3.1, or to a level where the premiums already paid would exceed then current Internal Revenue Service limits. If you request a partial cash withdrawal and these conditions apply, we will contact you to determine if you want to cancel the request, withdraw a smaller amount, or surrender the policy.

**Surrender Charges**

If, within the first 15 policy years, you request a full cash withdrawal or the policy ends because the grace period expired, we will deduct a surrender charge from the cash value. We will also deduct a surrender charge from the cash value if you have increased the specified face amount and, within 15 years of the increase, you request a full cash withdrawal or the policy ends because the grace period expired. No surrender charge applies to an increase in the specified face amount of insurance resulting from a change in the death benefit option.

## Payments During Insured's Lifetime (Continued)

The surrender charge per thousand dollars of specified face amount of insurance is as follow:

*Option A at Issue or Increase:*

| Age at Issue or Increase | Policy Years Since Issue or Increase | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 0-5 | $3 | $3 | $3 | $3 | $3 | $2 | $2 | $2 | $2 | $2 | $1 | $1 | $1 | $1 | $1 |
| 6-10 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 |
| 11-20 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 |
| 21-25 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 |
| 26-30 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 |
| 31-35 | 7 | 6 | 6 | 6 | 5 | 5 | 5 | 4 | 4 | 3 | 3 | 2 | 2 | 1 | 1 |
| 36-40 | 8 | 7 | 7 | 7 | 6 | 6 | 5 | 5 | 4 | 4 | 3 | 3 | 2 | 1 | 1 |
| 41-44 | 10 | 9 | 8 | 8 | 7 | 7 | 6 | 6 | 5 | 4 | 4 | 3 | 2 | 2 | 1 |
| 45-50 | 12 | 12 | 11 | 10 | 10 | 9 | 8 | 7 | 7 | 6 | 5 | 4 | 3 | 2 | 1 |
| 51-54 | 15 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 1 |
| 55-59 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 6 | 5 | 3 | 2 |
| 60-69 | 22 | 21 | 20 | 18 | 17 | 16 | 15 | 13 | 12 | 11 | 9 | 7 | 6 | 4 | 2 |
| 70-79 | 22 | 21 | 20 | 18 | 17 | 16 | 15 | 13 | 12 | 11 | 9 | 8 | 6 | 4 | 2 |
| 80 | 22 | 21 | 20 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 10 | 9 | 8 | 6 | 3 |

*Option B at Issue or Increase:*

| Age at Issue or Increase | Policy Years Since Issue or Increase | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 0-5 | $4 | $4 | $3 | $3 | $3 | $3 | $3 | $2 | $2 | $2 | $2 | $1 | $1 | $1 | $1 |
| 6-10 | 4 | 4 | 4 | 4 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 1 | 1 | 1 | 1 |
| 11-20 | 5 | 5 | 5 | 4 | 4 | 4 | 3 | 3 | 2 | 2 | 2 | 1 | 1 | 1 | 1 |
| 21-25 | 7 | 7 | 6 | 6 | 6 | 5 | 5 | 4 | 4 | 3 | 3 | 2 | 2 | 1 | 1 |
| 26-30 | 10 | 8 | 7 | 7 | 7 | 6 | 6 | 5 | 4 | 4 | 3 | 3 | 2 | 1 | 1 |
| 31-35 | 12 | 12 | 11 | 10 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 4 | 3 | 2 | 1 |
| 36-40 | 15 | 14 | 13 | 12 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 1 |
| 41-44 | 20 | 20 | 19 | 18 | 17 | 16 | 14 | 13 | 12 | 10 | 9 | 7 | 5 | 4 | 2 |
| 45-50 | 24 | 24 | 24 | 22 | 21 | 19 | 17 | 16 | 14 | 12 | 10 | 8 | 6 | 4 | 2 |
| 51-54 | 27 | 27 | 26 | 24 | 23 | 21 | 19 | 18 | 16 | 14 | 12 | 10 | 7 | 5 | 3 |
| 55-59 | 30 | 29 | 27 | 25 | 24 | 22 | 20 | 18 | 16 | 14 | 12 | 10 | 8 | 5 | 3 |
| 60-69 | 32 | 30 | 29 | 27 | 25 | 23 | 22 | 20 | 18 | 15 | 13 | 11 | 8 | 6 | 3 |
| 70-79 | 36 | 34 | 33 | 31 | 29 | 27 | 25 | 23 | 20 | 18 | 16 | 14 | 10 | 7 | 4 |
| 80 | 40 | 38 | 36 | 34 | 32 | 30 | 28 | 26 | 24 | 22 | 19 | 17 | 14 | 11 | 6 |

However during the first two policy years, the surrender charge, together with all sale charges previously deducted from the premiums paid, will not exceed the total of:

    30% of the premiums paid up to one guideline annual premium

          PLUS

    10% of the premiums paid which are greater than one guideline annual premium but not more than two guideline annual premiums

          PLUS

    9% of the premiums paid which are greater than two guideline annual premiums.

The above also applies to a surrender charge allowable to an increase in the specified face amount if policy is surrendered within 2 years of the increase.

The cash surrender value of an inforce policy is not affected by the above limits during the first two policy years.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Payments During Insured's Lifetime (Continued)

**Policy Loan**

At any time, you may get cash by taking a policy loan upon assignment of this policy as sole security. If there is an existing loan, you can increase it.

The maximum amount available for a new or increased loan will be the greater of the policy's cash surrender value less two monthly deductions or 75% of the policy's cash surrender value.

The smallest amount you can borrow at any one time is $250.

The loan will be allocated proportionately among the Fixed Account and the Investment Divisions of the Separate Account.

Loan interest is charged daily at the rate of 8% a year, and is due at the end of each policy year. Interest not paid within 31 days after it is due will be added to the loan principal. It will be added as of the due date and will bear interest at the same rate as the rest of the loan. It will be deducted proportionately from the policy's cash value in the Fixed Account and each Investment Division of the Separate Account and will be transferred to the Policy Loan Account. The amount transferred will be treated as an increased loan.

**Loan Repayment**

You may repay all or part (but not less than $50) of a policy loan at any time while the insured is alive and this policy is in force. You must tell us when you make a payment if the payment is intended as a loan repayment. Otherwise, it will be treated as a premium payment. Loan repayments will be allocated in the same manner as net premium payments.

Failure to repay a policy loan or to pay loan interest will not terminate this policy unless the cash surrender value is less than the monthly deduction due on a monthly anniversary. In that case, the Grace Period provision will apply (see page 17).

**Effect of a Policy Loan on the Cash Value**

When a loan is made, the cash value in each Investment Division of the Separate Account equal to the portion of the policy loan allocated to each Investment Division will be transferred to a Policy Loan Account within the General Account. The cash value in the Fixed Account equal to the portion of the policy loan allocated to that Account will also be transferred to the Policy Loan Account.

Amounts in the Policy Loan Account will be credited with interest at a rate we set but never less than 4%. Interest credited to amounts in the Policy Loan Account will be allocated at least once a year among the Fixed Account and the Investment Divisions of the Separate Account in the same proportions as net premiums are then being allocated.

**Deferment**

We reserve the right to defer calculation and payment of benefits in the following circumstances:

1. If your policy is in force with a cash value in the Separate Account, it will generally not be practical for us to determine the investment experience of the Separate Account during any period when the New York Stock Exchange is closed for trading (except for customary weekend and holiday closings), or when the Securities and Exchange Commission restricts trading or determines that an emergency exists. In such a case and with respect to the Separate Account, we reserve the right to defer: (a) determination, application, or payment of a cash withdrawal value except for a partial cash withdrawal to pay a premium to us; (b) determination of policy loans except for a loan to pay a premium to us; (c) a change in the allocation among the Investment Divisions of the Separate Account; and (d) payment of the death benefit.

2. If your policy is in force with a cash value in the Fixed Account, we may defer paying a cash withdrawal value from that account for up to 6 months from the date we receive a request for payment. If we delay for 30 days or more, interest will be paid at a rate not less than 4% a year.

3. We may delay making a loan from the Fixed Account, except for a loan to pay a premium to us, for up to 6 months from the date you request the loan.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

# Premiums

**Premium Payments**

Premium payments other than the first premium are to be sent to our Designated Office.

No insurance will take effect before the first premium is paid. Other premiums may be paid at any time while the policy is in force and before the Final Date of Policy and in any amount subject to the limits described below.

We will send premium notices, if you request in writing, according to the planned premium shown on page 3. After the first two policy years, you may skip planned premium payments or change their frequency and amount if the cash surrender value is large enough to keep your policy in force.

The planned premium shown on page 3 was determined as an amount which would be sufficient to continue this policy to the Final Date, assuming a continuation of current mortality experience, assuming reasonable investment results, and assuming that there is no policy loan, cash withdrawal, or change in the death benefit. However, the planned premium may need to be increased in order to keep this policy in force if there is any change in these assumptions or in the amount and frequency of premium payments.

**Limits**

During the first two policy years, total premiums may not be less than the minimum required premium shown on page 3. After the first two policy years, additional premium payments may be necessary to keep the policy in force depending upon actual investment experience and the timing and frequency of the premium payments. Each planned premium payment after the first two policy years must be at least $200 annually and $100 semi-annually ($15 for a Special Account payment). However, any unplanned premium payment must be at least $250.

We may increase these minimum premium limits. No increase will take effect until 90 days after notice is sent.

The total premiums paid in a policy year may not exceed the maximum we set for that year. When we set the maximum for total premiums paid in a policy year, we will take account of any requirements in federal legislation relating to the definition of life insurance. We will return to you any premium paid in a policy year to the extent it is more than the maximum.

**Grace Period**

If, during the first two policy years, the cash surrender value on any monthly anniversary is insufficient to cover the monthly deduction and the total premiums paid as of a monthly anniversary are not equal to the minimum required premiums shown on page 3, there will be a grace period of 61 days to pay an amount equal to the difference between the total premiums previously paid and the minimum required premiums. If you do not pay this amount the policy will end and we will send you any sales charge we may have deducted which exceeds the maximum surrender charge permitted during the first two policy years.

If, after two policy years or at any time after you change the death benefit or reinstate this policy, the cash surrender value on any monthly anniversary is less than the deduction for that month, there will be a grace period of 61 days after that anniversary to pay an amount that will cover two monthly deductions. If you do not pay this amount the policy will end, without value.

In either case we will send you a notice at the start of the grace period. We will also send a notice to any assignee on our records.

If the insured dies during the grace period, we will pay the insurance proceeds minus any overdue monthly deduction.

**Reinstatement**

If the grace period has ended and you have not paid the required premium and have not surrendered your policy for its cash surrender value, you may reinstate this policy while the insured is alive if you:

1. Request in writing reinstatement within 3 years after the end of the grace period;

2. Provide evidence of insurability satisfactory to us;

3. Pay a sufficient amount to keep the policy in force for at least 2 months after the date of reinstatement; plus (a) an amount sufficient to cover the unpaid portion of the charges applicable during the first 12 policy months; plus (b) any portion of the surrender charge which was not paid when the policy ended because the cash value was not sufficient to pay such portion of the charge: plus (c) interest on (a) to the date of reinstatement at the rate of 6% a year.

Any policy loan and interest due when the policy ends will be cancelled.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Premiums (Continued)

The effective date of the reinstated policy will be the date we approve the reinstatement application.

The amount of cash value on the date of reinstatement will be equal to:

* the net premiums paid at reinstatement;

> PLUS

* an amount equal to the lesser of:

> (i)   the surrender charge which would apply under the policy if it were surrendered in the policy year of reinstatement as if the policy had not ended earlier, and

> (ii)  the total surrender charges as described on page 14 when the policy ended, except if the policy ended during the first two policy years, the total surrender charges actually paid;

> MINUS

* the amounts paid in accordance with (a), (b) and (c) in item 3 above.

## Ownership and Beneficiary

**Owner**

As owner, you may exercise all rights under your policy while the insured is alive. You may name a contingent owner who would become the owner if you die before the insured.

**Change of Ownership**

You may name a new owner at any time. If a new owner is named, any earlier choice of a contingent owner, beneficiary, contingent beneficiary or optional income plan will be cancelled, unless you specify otherwise.

**Beneficiary**

The beneficiary is the person or persons to whom the insurance proceeds are payable when the insured dies. You may name a contingent beneficiary to become the beneficiary if all the beneficiaries die while the insured is alive. If no beneficiary or contingent beneficiary is named, or if none is alive when the insured dies, the owner (or the owner's estate) will be the beneficiary. While the insured is alive, the owner may change any beneficiary or contingent beneficiary.

If more than one beneficiary is alive when the insured dies, we will pay them in equal shares, unless you have chosen otherwise.

**How to Change the Owner or the Beneficiary**

You may change the owner, contingent owner, beneficiary or contingent beneficiary of this policy by written notice or assignment of the policy. No change is binding on us until it is recorded at our Designated Office.

Once recorded, the change binds us as of the date you signed it. The change will not apply to any payment made by us before we recorded your request. We may require that you send us this policy to make the change.

**Collateral Assignment**

Your policy may be assigned as collateral. All rights under the policy will be transferred to the extent of the assignee's interest. We are not bound by an assignment or release thereof unless and until it is in writing and is recorded at our Designated Office. We are not responsible for the validity of any assignment.

## General Provisions

**The Contract**

This policy includes any riders and, with the application attached at issue and any application added after issue, makes up the entire contract. All statements in the application will be representations and not warranties. No statement will be used to contest the policy unless it appears in the application.

**Limitation on Sales Representative's or Other Person's Authority**

No account representative or other person except our President, Secretary, or Vice-President may make or change any contract of insurance, or change or waive any of the terms of this policy. Any change or waiver must be in writing and signed by our President, Secretary, or Vice-President.

**Incontestability**

We will not contest the validity of your policy after it has been in force during the insured's lifetime for 2 years from the date of policy. We will not contest the validity of any increase in the death benefit after such increase has been in force during the insured's lifetime for 2 years from its effective date.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## General Provisions (Continued)

**Age and Sex**  If the insured's age or sex on the date of the policy is not correct as shown on page 3, we will adjust the benefits under this policy. If the insured dies before a correction is made, the adjusted benefits will be the amount bought by the monthly deduction at the correct age and sex just before the date of death. Otherwise, we will recompute the cash value by using the monthly cost of term insurance at the correct age and sex for the life of the policy, using the level of benefits bought by the monthly deduction at the correct age and sex just before we learned the correct age or sex.

**Nonparticipation**  This policy is not eligible for dividends, it does not participate in any distribution of our surplus.

**Computation of Values**  The Fixed Account Cash Value is computed using a guaranteed minimum interest rate of 4% a year. These values and the maximum term insurance rates shown on page 4 are based on the 1980 Commissioners Standard Ordinary Mortality (sex distinct) Table, age last birthday.

For substandard policy classifications, these values and rates are based on a modified version of the 1980 CSO Mortality Table that reflects our mortality experience.

We have filed a detailed statement of the method of computation with the insurance supervisory official of the state in which this policy is delivered. The values under this policy are equal to or greater than those required by the law of that state.

**Annual Reports**  Each year we will send you a report showing the current death benefit, cash value and any outstanding policy loans for this policy. It will show the amount and type of credits to and deductions from the cash value during the past policy year. The report will also include any other information required by state laws and regulations.

**Illustration of Future Benefits**  At any time, we will provide an illustration of the future benefits and values under your policy. You must ask in writing for this illustration. The first illustration in any policy year will be furnished free of charge. Any subsequent request in that policy year will be subject to a service fee of up to $5.

## Exclusion

**Suicide**  The insurance proceeds will not be paid if the insured commits suicide, while sane or insane, within 2 years from the date of policy. Instead we will pay the beneficiary an amount equal to all premiums paid, without interest, less any policy loan and loan interest and less any partial cash withdrawals. If the insured commits suicide, while sane or insane, more than 2 years after the date of this policy but within 2 years from the effective date of any increase in the death benefit, our liability with respect to the increase will be limited to its cost.

## Methods of Payment

Unless otherwise requested, we may pay the insurance proceeds when the insured dies, or the cash surrender value on surrender of the policy in one sum, or by placing the amount in an account that earns interest. The payee will have immediate access to all or any part of the account. If requested, we will apply the amount under one or more of the following payment plans:

**Option 1.**  *Interest Income--* The amount applied will earn interest which will be paid monthly. Withdrawals of at least $500 each may be made at any time by written request.

**Option 2.**  *Instalment Income for a Stated Period--* Monthly instalment payments will be made so that the amount applied, with interest, will be paid over the period chosen (from 1 to 30 years).

**Option 2A.**  *Instalment Income of a Stated Amount--* Monthly instalment payments of a chosen amount will be made until the entire amount applied, with interest, is paid.

**Option 3.**  *Single Life Income--Guaranteed Payment Period--* Monthly payments will be made during the lifetime of the payee with a chosen guaranteed payment period of 10, 15 or 20 years.

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

## Methods of Payment (Continued)

**Option 3A.**      *Single Life Income--Guaranteed Return--* Monthly payments will be made during the lifetime of the payee. If the payee dies before the total amount applied under this plan has been paid, the remainder will be paid in one sum as a death benefit.

**Option 4.**      *Joint and Survivor Life Income--* Monthly payments will be made jointly to two persons during their lifetime and will continue during the remaining lifetime of the survivor. A total payment period of 10 years is guaranteed.

**Other Frequencies and Plans**      Instead of monthly payments, you may choose to have payments made quarterly, semiannually or annually. Other payment plans may be arranged with us.

**Choice of Payment Plans**      A choice of a payment plan for insurance proceeds made by you in writing and recorded by us while the insured is alive will take effect when the insured dies. All other choices of payment plans will take effect when recorded by us or later, if requested. When a payment plan starts, we will issue a contract which will describe the terms of the plan. We may require that you send us this policy. We may also require proof of the payee's age.

Payment plans may be chosen:

1.  By you during the lifetime of the insured.

2.  By the beneficiary within one year after the date the insured died and before any payment has been made, if no choice of payment plan was in effect on the date of death.

A choice of a payment plan will not take effect unless each payment under the plan would be at least $50.

**Limitations**      If the payee is not a natural person, the choice of a payment plan will be subject to our approval. An assignment for a loan will modify a prior choice of payment plan. The amount due the assignee will be payable in one sum and the balance will be applied under the payment plan.

Payment plan payments may not be assigned and, to the extent permitted by law, will not be subject to the claims of creditors.

**Payment Plan Rates**      Amounts applied under the interest income and instalment payment plans will earn interest at the rate we set from time to time. That rate will never be less than 3% a year.

Life income plan payments will be based on a rate set by us and in effect on the date the insurance proceeds or cash surrender value become payable.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

## Methods of Payment (Continued)

**Minimum Payments under Payment Plans-** Monthly payments under Options 2, 3, 3A and 4 for each $1,000 applied will not be less than the amounts shown in the following Tables.

| Option 2. *Instalment Income for a Stated Period* Monthly Payment for each $1,000 Applied | | | | | |
|---|---|---|---|---|---|
| Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment |
| 1 | $84.47 | 11 | $8.86 | 21 | $5.32 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.47 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 |

To determine the minimum amount for a quarterly payment, multiply the above monthly payment by 2.99; for semiannual by 5.96; and for annual by 11.84.

| Payee's Age | Option 3. *Single Life Income-* Guaranteed Payment Period Minimum Amount of each Monthly Payment for each $1,000 Applied | | | | | | Option 3A. *Single Life Income-* Guaranteed Return Minimum Amount of each Monthly Payment for each $1,000 Applied | |
|---|---|---|---|---|---|---|---|---|
| | Guaranteed Payment Period | | | | | | | |
| | 10 Years | | 15 Years | | 20 Years | | | |
| | Male | Female | Male | Female | Male | Female | Male | Female |
| 50 | $4.29 | $3.94 | $4.23 | $3.91 | $4.15 | $3.86 | $4.11 | $3.82 |
| 55 | 4.72 | 4.29 | 4.62 | 4.23 | 4.47 | 4.15 | 4.47 | 4.11 |
| 60 | 5.29 | 4.73 | 5.09 | 4.62 | 4.79 | 4.47 | 4.92 | 4.47 |
| 65 | 6.02 | 5.29 | 5.60 | 5.09 | 5.09 | 4.81 | 5.48 | 4.93 |
| 70 | 6.86 | 6.02 | 6.08 | 5.63 | 5.31 | 5.13 | 6.18 | 5.53 |
| 75 | 7.71 | 6.92 | 6.46 | 6.16 | 5.44 | 5.36 | 7.05 | 6.32 |
| 80 | 8.48 | 7.89 | 6.70 | 6.55 | 5.49 | 5.47 | 8.15 | 7.36 |
| 85 and over | 9.07 | 8.74 | 6.82 | 6.77 | 5.51 | 5.50 | 9.54 | 8.70 |

| Option 4. *Joint and Survivor Life Income-* Guaranteed period of 10 Years Minimum Amount of each Monthly Payment for each $1,000 Applied | | | |
|---|---|---|---|
| Age of Both Payees | One Male and One Female | Two Males | Two Females |
| 50 | $3.64 | $3.79 | $3.54 |
| 55 | 3.93 | 4.11 | 3.80 |
| 60 | 4.30 | 4.55 | 4.13 |
| 65 | 4.80 | 5.13 | 4.57 |
| 70 | 5.47 | 5.90 | 5.17 |
| 75 | 6.33 | 6.80 | 6.00 |

On request, we will provide additional information about amounts of premium payments.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Pothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

> This is a copy of the "Request for Check-O-Matic Arrangement," and "Authorization to Honor Checks, Share Drafts or Account Debits" or form you completed at the time you applied for your policy. The original has been retained by the applicable Company.

**Metropolitan Life**℠
AND AFFILIATED COMPANIES

☐ Metropolitan Life Insurance Company          ☐ Metropolitan Tower Life Insurance Company
☐ Metropolitan Insurance and Annuity Company   ☐ MetLife Security Insurance Company

## Request for Check-O-Matic Arrangement

The Company checked above is requested and authorized to draw checks or share drafts, to issue directions to debit a bank account, or to initiate electronic fund transfer debits each month to pay the premiums due on a life insurance policy as described below. These premiums are to be charged against the account identified below.

**(Note: If the Check-O-Matic Arrangement is Desired, Attach a Voided Blank Check or Draft to Ensure Accuracy)**

The Check-O-Matic arrangement will apply to any insurance policy issued on the basis of an application dated .............. 19 ............. in which application ........................................... is named as the Proposed Insured, or to any renewal of such policy. However, the Check-O-Matic arrangement will not take effect unless at the time of delivery of the policy any due premiums have been paid. Beginning with the first monthly Check-O-Matic due date after the delivery date of the policy, the company will draw checks or share drafts, or effect debits as authorized above, for further premiums becoming due, or if the policy provide for flexible premiums found in the policy. Unless another date is specified below, the debits will be initiated on or about the policy's issue date.

The undersigned agree (s) that the Check-O-Matic arrangement will end if the insured, the owner if other than the insured, or the account depositor sends the Company a written request to end it. This arrangement may also be ended by the Company upon written notice to the insured, the owner if other than the insured, and the account depositor.

If the policy terms provide for flexible premiums, the undersigned understands and agrees that if schedule planned premiums and policy cash value are not sufficient to pay for the monthly deductions as described in the policy, insurance coverage may end.

If this arrangement ends or if the full check of any check, share draft or other debit charged to an account by the Company under this arrangement is not received, and if no premium is unpaid beyond its grace period, further premiums (including any then due) will become payable directly to the Company. These premiums will be based on the rates in effect on the date of the policy. They will be payable at the most frequent mode of payment which will meet the Company's rule, in effect when this arrangement ends, for minimum amounts. The Company will determine the amount payable for any period up to the time when the first premium is due under the new mode of payment.

Please debit my account on or about the .................... day of each month.

Give policy or contract number of any other Company policies or contracts currently under the Check-O-Matic arrangement: ...................................................................

---

### Authorization to Honor Checks, Share Draft or Account Debits

Name of Depositor _____

(Print as it appears on Banking Institution records)     (Account or Code Number)

To _____

(Name of Banking Institution)          (Branch)

_____     _____

(Transit No.)

(Address of Banking Institution or Branch where account is maintained)

As a convenience to me I authorize you to pay and charge to my account (a) checks, (b) share drafts, (c) electronic fund transfer debits or (d) other account debits made by, and payable to the order of the Company checked above.

I agree that your treatment of each check, share draft of debit, and your rights with respect to it, will be the same as if it were signed or initiated personally by me. I further agree that if any check, share draft or debit is dishonored for any reason, you will not be under any liability even though dishonor results in the forfeiture of insurance.

I further agree that this authorization is to remain in effect until you receive written notice from me of its revocation unless you end it earlier.

---

### Request and Authorization Signatures

Date _____

Date _____

Policy or

Contract No. _____

Signature of Proposed
Insured (Owner)

_____

Signature of Depositor _____

(If Joint Account, other Depositor sign below)

Signature of Depositor _____

SPECIMEN

O36K-16-CK                                                                CAAAPZ

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

100520112 **-3**

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

**MetLife®**  ☐ Metropolitan Life Insurance Company
☐ Metropolitan Insurance and Annuity Company

### PART A — APPLICATION FOR LIFE INSURANCE

**1. Identity of Proposed Insured**

*John E. Grove*

Full Name: First, Middle Initial, Last Name  |  Sex: *M*  Marital Status: *M*  Date of Birth Mo./Day/Yr. *37*

*MD*     *56*    *6'3"*    *200*    *250000*    *0426*

State/Country of Birth | Co. Use Enter Age Last Birthday | Height Ft. In. | Weight Pounds | Total Life Insurance in all companies (including Metropolitan) | Social Security Number

**2. Address**

*R.D. 4 Box 4080 Sorry Rd Glen Rock PA 17327*

Mailing Address of Proposed Insured, or Owner if named in Item 6. Number, Street, City or Town, State and Zip Code

**3. Plan**

*FPMLI*     $ *250,000*

(a.) PLAN (For VLI or FPMLI Complete Supplement II to Part A)  |  (b.) AMOUNT (The Specified Face Amount or Guaranteed Insurance Amount)

(C.) COMPLETE FOR UNIVERSAL LIFE PLANS
I. Death Benefit Option (check one):
☒ Option A (Specified Face Amount)
☐ Option B (Specified Face Amount PLUS the accumulation fund or cash value)
II. Planned Premium Amount $ *150.00*

(d.) For a qualified Plan specify:
I. Type of Plan
II. New Plan
III. Existing Plan
Employer Group No.

(e.) State any Special Request

**4. Optional Benefits**

☐ Disability Waiver   ☐ 1 Year Cost of Living   ☐ 10 Year Term $    ☐ Guarantee Issue: Option Amount

☐ Accidental Death   ☐ 1 Year Term $   ☐ 20 Year Family Income $    $

**5. Premium Payments**

(a.) Select a mode of payment which is available with the plan applied for:
☐ Annual   ☒ C-O-M   ☐ Govt. Allot.-Mil.   ☐ Govt. Allot.-Civ.   ☐ Sal. Sav.   ☐

(b.) Amount paid with application: $ *150.00*   ☐ None   This Amount ☒ is   at least equal to one C-O-M premium
☐ is not

**6. Owner/ Contingent Owner**

(a.) Owner if other than Proposed Insured (Full Name of person or firm) | Relationship to Proposed Insured | Date of Birth | Social Security # or Tax I.D. #

(b.) Contingent Owner (Full Name) | Relationship to Proposed Insured | Date of Birth | Social Security # or Tax I.D. #

(c.) ☐ Check here if Proposed Insured is to become the Owner if pre-deceased by both the Owner and Contingent Owner, if any, indicated above (only applicable if Proposed Insured is age 15 or over).

**7. Beneficiary/ Contingent Beneficiary**

(a.) Revocable Beneficiary (Full Name) *June A. Grove* | Relationship to Proposed Insured *Wife* | Date of Birth *-34*

*John W. Grove* | Relationship to Proposed Insured *children* | Date of Birth

(b.) Revocable Contingent Beneficiary (Full Name) | Relationship to Proposed Insured | Date of Birth

(c.) ☐ Check here if all present and future children born of the marriage of Proposed Insured and current spouse are to be included as contingent beneficiaries.

(d.) Address of Beneficiary or Contingent Beneficiary, if different from address in Item 2.

**NOTE:** (i) Unless indicated otherwise, if more than one beneficiary is alive when the insured dies, we will pay them in equal shares. If no beneficiary is alive when the insured dies, the contingent beneficiary will become the beneficiary. (ii) Any entry in Item 7 is invalid for a Corporate Pension or Profit-Sharing Plan or Public Employee Deferred Compensation Plan. (iii) A check in Item 7(c) above is valid only if the proposed insured's current spouse is named as the beneficiary.

O36K-16

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

**8. Occupation**

(a.) Occupation of Proposed Insured - Job Title and Duties

*Engineer*

(b.) Employed *Computer Sciences Corp*    How Long? *6 mos*

(c.) Actively at Work? (If a homemaker, are you performing regular household duties; if a student, are you attending school regularly? If No, attach explanatory letter.)    Yes ☒  No ☐

**9. Tobacco Use**

Indicate date Proposed Insured last smoked/used:

cigarette ☒ never    cigar ☒ never    pipe ☒ never    smokeless tobacco ☒ never

**10. Attending Physician**

(a.) Name and address of personal physician, practitioner or health facility used by Proposed Insured.
*Dr. David Chalker    Shrewsbury Family Clinic    Old Farm Rd    Shrewsbury PA 14361*

(b.) Date of last consultation. *Sept 1993*

(c.) Reason for consultation and diagnosis, treatment and advice. *Annual Physical All O.K. No Treatment*

**ITEMS 11. AND 12. APPLY TO AND ARE TO BE COMPLETED FOR ALL PERSONS TO BE INSURED.**

**11. Medical Data**

For any Yes answers, give details below.
Has any person proposed for insurance:

(a.) In the last five years, been treated, examined, or advised by any physician, practitioner, or health facility? (Do not include colds, minor viruses or minor injuries which prevented normal activities for a period less than 5 days.)    ☐ Yes  ☒ No

(b.) Ever received treatment, attention, or advice from any physician, practitioner, or health facility for, or been told by any physician, practitioner or health facility that such person had heart trouble, chest pain, high blood pressure, diabetes, lung disease, tumor, or cancer?    ☐ Yes  ☒ No

(c.) In the last two years, had persistent cough, pneumonia, chest discomfort, muscle weakness, unexplained weight loss of ten pounds or more, swollen glands, patches in mouth, visual disturbance or recurring diarrhea, fever, or infection?    ☐ Yes  ☒ No

(d.) In the last five years, received or applied for disability or hospitalization benefits from any source?    ☐ Yes  ☒ No

(e.) Ever had any surgical operation not revealed in previous questions or gone to a hospital, clinic, dispensary, or sanitarium for observation, examination, or treatment not revealed in previous questions?    ☐ Yes  ☒ No

(f.) Had a parent, brother, or sister with heart or coronary artery disease, high blood pressure, cancer or diabetes? (If Yes, give details for each person, including age at onset and age at death if applicable.)    ☒ Yes  ☐ No

**Details**

| Item No. | Name of Person | Name and Address of Each Physician, Practitioner and Health Facility | Dates and Durations | Nature and Severity of Condition, Frequency of Attacks, Specific Diagnosis and Treatment |
|---|---|---|---|---|
| F | Mother | | | Heart Disease Death age 72 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Details for Yes answers to items (d.) and (f.)

O36K-16

100520112 -5

**12.**
**Non-Medical**
**Data**

For any Yes answers to Items (a.) through (f.), give details below.
Has any person proposed for insurance:

(a.) Ever had an application for Life or Health Insurance declined, postponed, rated, modified or required an extra premium? ☐ Yes ☒ No

(b.) Any other application for Life or Health Insurance now pending or planned in this or any other company? ☐ Yes ☒ No

(c.) Intentions in connection with the policy applied for, to borrow against, surrender or discontinue existing insurance or annuities (including Group) in force with this or any other insurer? ☒ Yes ☐ No

(d.) Had a driving license suspended or revoked in the last 3 years; or been convicted of 3 or more moving violations in the last 3 years; or ever been convicted of driving while impaired or intoxicated? ☐ Yes ☒ No

(e.) Been outside the U.S. or Canada in the past 2 years, or intend to be in the next 12 months? ☐ Yes ☒ No

(f.) Ever used heroin, cocaine, barbiturates or other drugs, except as prescribed by a physician or other licensed practitioner; or received treatment or advice from a physician or other practitioner regarding the use of alcohol, or the use of drugs except for medical purposes; or received treatment or advice from an organization which assists those who have an alcohol or drug problem? ☐ Yes ☒ No

(g.) Flown as a pilot, student pilot, crew member or passenger (except on a scheduled airline) in the last 2 years or intend to do so in the next 12 months? If Yes, complete the Aviation Questionnaire. ☐ Yes ☒ No

(h.) Engaged in, or plan to engage in Automotive, Motorcycle or Power Boat Sports; Bobsledding; Ballooning; Scuba or Sky Diving; Hang Gliding (including Slope Soaring, Para-kiting, etc.); Mountain Climbing; Parachuting; Snowmobile Racing or any other hazardous sport or hobby? If Yes, complete the Avocation Questionnaire. ☐ Yes ☒ No

**Details**
Item No.

C    1035 Exchange Attached

**Driver's**
**License**
**Data**

In ALL cases, give name, driver's license number and state of issue for each person to be insured.

PA.

Case# 2025-02181-0 - JUDGE 39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

O36K-16

100520112 -6

## Agreement

**I have read this application and agree that all statements and answers are true and complete to the best of my knowledge and belief. It is also agreed that:**

1. The statements and answers in Part A and if applicable Supplements I and II to Part A, Part B and the Aviation and/or Avocation Questionnaire, are the basis of any policy issued.

2. No sales representative or other person except the President, Secretary or a Vice-President of Metropolitan may (a) make or change any contract of insurance; or (b) make any binding promises about insurance benefits; or (c) change or waive any of the terms of an application, receipt or policy.

3. No information about any person to be insured will be considered to have been given to Metropolitan unless it is stated in this application.

4. Except as set forth in the Receipt and Temporary Insurance Agreement, Metropolitan will have no liability until a policy is delivered personally to the owner and the full first premium due is paid. The policy will then be in effect as of its date of issue. But it will not be in effect unless at the time it is delivered:

(a) the condition of health of each person to be insured, and of the applicant if the Applicant's Waiver of Premiums Benefit is applied for, is the same as given in the application; and

(b) no person to be insured, nor the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, has received any medical advice or treatment from a physician or other practitioner since the date of the application.

5. If any annual dividends are payable on a policy issued under this application, they may be taken in cash or used in any other way provided by the policy. A choice may be made by an entry in item 3(e). If there is no such entry, annual dividends will be: (a) left with Metropolitan to earn interest if the policy is a Term Plan or if Item 3(d) is checked; or (b) used to buy paid-up additional insurance if the policy is a Life plan and Item 3(d) is not checked; or (c) used as stated in the policy applied for.

**If dividends are left with Metropolitan to earn interest and Item 3(d) is not checked, the owner certifies, under penalty of perjury, that the owner's Social Security or Tax I.D. number shown in Item 1 or 6(a) is correct and the owner ☐ is ☒ is not subject to a backup withholding order issued by the IRS.**

| WITNESS (Licensed Resident Agent) | PLACE (City/State where signed) | Mo. Day. Yr. | SIGNATURE |
|---|---|---|---|
| *Tom Weiss* | *Balto. Md.* | *4-30-94* | X *John E. Grove* |

Witness to Signature in (A)                                                                 (A) Proposed Insured (Age 15 or Over)

Br./Dist. No. *B16*   Agency *087*   Index *2*

Witness to Signature in (B)                                                                 (B) Other Proposed Insured

Witness to Signatures in (C) or (D)                                                    (C) Owner (if named in Item 6)

If Owner is a firm or corporation, enter on line (C) full business name as it appears in Item 6, and have a partner or officer (other than Proposed Insured) sign on line (D), and give title.

(D)

Signature                                                                                                     Title

Complete Only for a Juvenile Policy. Also, be sure to complete Item 6 and have Owner sign in (C) above.

Witness to Signature in (E)                                                                  (E) Applicant (Juvenile Policy)

Witness to Signature (F)                                                                      (F) Child (required only if a New York State resident and exact age is between 14½ and 15.)

Also to be signed below if Applicant or Owner is not a parent, guardian or person liable for child's support.
I consent to this application for insurance on the life of the Proposed Insured. I have read the answers in this application, and they are true and complete to the best of my knowledge and belief.

Witness to Signature in (G)                                                                 (G) Parent, Guardian or Person Liable for Child's Support

O36K-16

Case# 2025-02181-0 - JUDGE 39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

## Part B of Application for Life Insurance Policy

**The spaces below are for answers of person to be examined only. Nothing but the answers of such person should be recorded.**

1. Name of Person to be Examined

   _John_     _E._     _Gidoue_

   First Name     Middle Initial     Last Name

2. Cigarette Smoking
   Date you last smoked a cigarette ☐ _____ ☑ never smoked
                                       (Date)

3. Name and address of your personal physician, practitioner or health facility.

   _DR. CHAULKER, SHREWSBURY FAM. PRAC. OLD FARM LN. SHREWSBURG, PA 17._

4. In past 5 years, has any physician, practitioner or health facility examined, advised or treated you?    Yes ☑   No ☐
   If Yes, give details below for each instance.

| Name and Address of each Physician, Practitioner and Health Facility | Dates | Your Symptoms or Ailments, or Other Reasons For Consultation. | Diagnosis, Treatment or Advice Given. |
|---|---|---|---|
| DR. CHAULKER. | 8/93 | ANNUAL PHYSICAL | WITHIN NORMAL LIMITS. |

5. Have you EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that you had:

   (a) Disease of heart, arteries, or veins; chest pain?    Yes ☐   No ☑

   (b) High blood pressure (hypertension)?    Yes ☐   No ☑

   (c) Cancer, tumor or polyp? (If Yes, also indicate type and part of body affected.)    Yes ☐   No ☑

   (d) Diabetes; sugar, albumin, or blood in urine?    Yes ☐   No ☑

   (e) Asthma, bronchitis, tuberculosis, or other lung disease?    Yes ☐   No ☑

   (f) Ulcers; colitis; or disorder of liver, stomach, gall bladder, or intestines?    Yes ☐   No ☑

   (g) Nervous breakdown, or any mental or nervous disorder?    Yes ☐   No ☑

   (h) Epilepsy, unconsciousness, or dizziness?    Yes ☐   No ☑

   (i) Kidney stones or any disease of the kidney, bladder, or other part of urinary tract?    Yes ☐   No ☑

   (j) Any disease of the prostate or testes if a male; of the uterus, ovaries or breasts if a female?
   (If hysterectomy or breast surgery, including biopsy, was performed, also indicate whether entire organ was removed; specific diagnosis, and how long hospitalized.)    Yes ☐   No ☑

   (k) Arthritis, rheumatic fever, gout; paralysis or disease or deformity of the bones, muscles or joints?    Yes ☐   No ☑

   (l) Disease of glands (thyroid, lymph, etc.); or anemia, leukemia or other blood disease?    Yes ☐   No ☑

   (m) Disease or impairment of eyes or ears?    Yes ☑   No ☐

6. Have you ever had a surgical operation not revealed above, or gone to a hospital, clinic, dispensary or sanatorium for observation, examination or treatment not revealed above?    Yes ☐   No ☑

7. In past 5 years:
   (a) Have you had any electrocardiogram, X-ray, or other medical test?    Yes ☑   No ☐
   (If Yes, name test and give reasons, dates, name and address of each physician or other practitioner, and each hospital, and results.)

   (b) Have you received, or applied for, disability or hospitalization benefits from any source?    Yes ☑   No ☐
   (i) (If Yes, give dates of onset (and of termination if fully recovered), reason, extent of disability and present status. (ii) If claim was made to Metropolitan, so indicate.

8. (a) Have you been aware of any impairment of health not revealed above? (If Yes, give details.)    Yes ☐   No ☑

   (b) Are you now contemplating any surgical operation, or are you planning to seek other medical advice or treatment? (If Yes, give details.)    Yes ☐   No ☑

   (c) In the past 6 months, have you taken any prescribed medication or have you been advised to restrict your diet or living routine? (If Yes, state details, who recommended, and give reason.)    Yes ☐   No ☑

O36K-B-PM (1192)

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM. Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

## Part B. (continued)

9. (a) Have you ever used heroin, cocaine, barbiturates or other controlled substances, except as medication prescribed by a physician or other licensed practitioner?  Yes ☐ No ☑

   (b) Have you ever received treatment or advice from a physician or other practitioner regarding the use of alcohol, or the use of drugs except for medicinal purposes; or received treatment or advice from an organization which assists those who have an alcohol or drug problem?  Yes ☐ No ☑

10. Did either of your parents or any of your brothers or sisters ever have heart or coronary artery disease, high blood pressure, cancer, diabetes or mental disease? (If Yes, give details for each person, including age at onset, in item 11.)  Yes ☑ No ☐

11.

| Family Record | Age if Living | Age at Death | Details to Item 10 and/or Cause of Death |
|---|---|---|---|
| Father | | 64 | HEART FAILURE - (CARDIAC ARREST) |
| Mother | | 72 | HEART FAILURE. |
| Brothers | 1 | 55 | — |
| Sisters | 2 | 54, 42 | — |

### For any Yes answer to Items 5 through 9 give the following details

| Item No. | Name and Address of Each Physician, Practitioner and Health Facility | Dates and Durations | Nature and Severity of Condition, Frequency of Attacks, Specific Diagnosis and Treatment |
|---|---|---|---|
| 5M | | | WEARS CORRECTIVE LENSES. |
| 7A | DR. CHAULKER   OLD FARM LN. SHREWSBURY, PA. | 8/93 | EKG AS PART OF ANNUAL PHYS. WITHIN NORMAL LIMITS. |
| 7B | DISABILITY (10%) - FROM MILITARY | | FOR BACK INJURY. |
| 10 | BROTHER - HIGH BLOOD PRESSURE MOTHER & FATHER - HEART DISEASE | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I have read the answers to Questions 2-11 before signing. They have been correctly written, as given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

| Witness to Signature | Place | Mo. | Day | Yr. | Signature |
|---|---|---|---|---|---|
| Joan E. Henry RN | GLEN ROCK PA | 5 | 7 | 94 | (X) John C. Grove |
| | | | | | Person being Examined |

O36K-B-PM (1192)

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by ANDREW D COTLAR, ESQ.

# ✤ MetLife

**Supplement II to Part A**

Application No. _____
Case No. _____

☐ Metropolitan Life Insurance Company
☐ Metropolitan Tower Life Insurance Company

Flexible Premium Multifunded Life (FPMLI)

**1. Investment Division/Account Allocation**

Select the percentage of premium to be allocated to each division/account. For each division/account to which an allocation is made the percentage must be a whole number and must be at least 10% (Enter zero for any division/account to which no allocation is made). The percentage will apply to future premiums unless changed by the owner.

| Division/Account | Allocation |
|---|---|
| Growth | 40% |
| Income | ___% |
| Money Market | ___% |
| Diversified | 20% |
| Aggressive Growth | 20% |
| International Stock | 20% |
| Stock Index | ___% |
| Fixed | ___% |
| Other (Specify) | ___% |
| | 100% |

**2. Suitability**

Applies to both Proposed Insured (Applicant for Juvenile policy) and Owner if Owner is other than Proposed Insured:

(a) Have you received a prospectus for the policy indicated above?     Yes ☒   No ☐
Edition date of Prospectus *April 30, 1993*
Edition dates of any supplements _____

(b) Have you received a prospectus for the Metropolitan Series Fund?     Yes ☒   No ☐
Edition date of Prospectus *April 30, 1993*
Edition dates of any supplements _____

(c) Do you understand that under the policy indicated above (exclusive of any optional benefits):

(i) the amount of death benefit in excess of the Specified Face Amount for FPMLI policies may increase or decrease depending on the policy's investment experience?     Yes ☒   No ☐

(ii) the duration of the death benefit for FPMLI policies may increase or decrease depending on the policy's investment experience?     Yes ☒   No ☐

(iii) the cash value may increase or decrease depending on the policy's investment experience?     Yes ☒   No ☐

With this in mind, do you believe that the policy indicated above is in accord with your insurance objectives and financial needs?     Yes ☒   No ☐

**Note:** upon request, we will furnish illustrations of benefits, including death benefits and cash values, for (a) the policy applied for and (b) a fixed benefit life insurance policy for the same premium.

**It is understood that, as specified in 2.(c) above, the amount and/or the duration of the Death Benefit and the amount of the Cash Value may increase or decrease based on the investment experience of the applicable Separate Account and are not guaranteed.**

| WITNESS (Licensed Resident Agent) | PLACE (City/State where Signed) | Mo. Day Yr. | Signature |
|---|---|---|---|
| *Tom Weiss*<br>Witness to Signature in (A) | *Balto. Md* | *4-30-94* | ✕ *John E Groce*<br>(A) Proposed Insured (Age 15 or Over) |
| Witness to Signature in (B) | | | (B) Owner (if named in Part A) |

If Owner is a firm or corporation, enter on line (B) full business name as it appears in Part A and have one or more partners or officers (other than Proposed Insured) sign on line (C), and give their titles.

(C) _____

| Complete Only for a Juvenile Policy. Also, be sure to complete Owner Designation in Part A and have Owner sign in (B) above. | |
|---|---|
| Witness to Signature in (D) | (D) Applicant (Juvenile Policy) |
| Witness to Signature in (E) | (E) Child (required only if a New York State resident and exact age is between 14½ and 15.) |
| Also to be signed below if Applicant or Owner is not a parent, guardian or person liable for child's support. I consent to this application for insurance on the life of the Proposed Insured. I have read the answers in this application, and they are true and complete to the best of my knowledge and belief. | |
| Witness to Signature in (F) | (F) Parent, Guardian or Person Liable for Child's Support |

O36 K-16-SUPP-II (0993)

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

See Over

AAABN1

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

# Table of Contents

| | Page |
|---|---|
| **Policy Specifications** | 3, 3.1 |
| **Table of Guaranteed Maximum Insurance Rates** | 4 |
| **Description of Investment Divisions in the Separate Account** | 5 |
| **Definitions** | 6 |
| **Payment When Insured Dies** | 7 |
| Insurance Proceeds | 7 |
| Death Benefit | 7 |
| Minimum Death Benefit | 8 |
| Death Benefit Adjustment | 8 |
| **Monthly Deduction** | 9 |
| Cost of Term Insurance | 9 |
| **Fixed Account** | 9 |
| Value | 9 |
| Interest Rate | 10 |
| **Separate Account** | 11 |
| Investment Divisions | 11 |
| Our Right to Make Changes | 11 |

| | Page |
|---|---|
| Index of Investment Experience | 12 |
| Value | 12 |
| **Owner's Right to Change Allocation** | 13 |
| **Payments During Insured's Lifetime** | 14 |
| Payment on Final Date of Policy | 14 |
| Full and Partial Cash Withdrawal | 14 |
| Surrender Charges | 14 |
| Policy Loan | 16 |
| Loan Repayment | 16 |
| Effect of a Policy Loan on the Cash Value | 16 |
| Deferment | 16 |
| **Premiums** | 17 |
| Premium Payments | 17 |
| Limits | 17 |
| Grace Period | 17 |
| Reinstatement | 17 |
| **Ownership and Beneficiary** | 18 |
| Owner | 18 |

| | Page |
|---|---|
| Change of Ownership | 18 |
| Beneficiary | 18 |
| How to Change the Owner or the Beneficiary | 18 |
| Collateral Assignment | 18 |
| **General Provisions** | 18 |
| The Contract | 18 |
| Limitation on Sales Representative's or Other Person's Authority | 18 |
| Incontestability | 18 |
| Age and Sex | 19 |
| Nonparticipation | 19 |
| Computation of Values | 19 |
| Annual Reports | 19 |
| Illustration of Future Benefits | 19 |
| **Exclusion** | 19 |
| Suicide | 19 |
| **Methods of Payment** | 19 |
| Other Frequencies and Plans | 20 |
| Choice of Payment Plans | 20 |
| Limitations | 20 |
| Payment Plan Rates | 20 |
| Minimum Payments Under Payment Plans | 21 |

> Page 2 has intentionally been left blank.

Any riders for additional benefits follow page 21.

## Notice

When you write to us, please give us your name, address and policy number. Please notify us promptly of any changes. We will write to you at your address last known to us.

Checks, drafts or money orders may be drawn to the order of Metropolitan Life Insurance Company (or "Met Life"). They are received subject to the condition that they may be handled for collection in accordance with the practice of the collecting bank or banks. If we do not receive the full amount of any check, draft or money order, it will not constitute payment. All payments are to be made in U.S. currency.

Metropolitan Life Insurance Company
Home Office
One Madison Avenue
New York, New York 10010-3690

Countersigned and Delivered _____ 19 ____ By _____

## Flexible Premium Multifunded Life Insurance Policy

Life insurance payable if the insured dies before the Final Date of Policy.
Cash Value, if any, less any policy loan and loan interest, payable on the Final Date.
Adjustable death benefit.
Premiums payable while the insured is alive and before the Final Date of Policy.
Premiums must be sufficient to keep the policy in force.
Not eligible for dividends.

7.6FM-90                                                                                                    AAABL2

EXHIBIT B

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

Case# 2025-02181-0 - JUDGE.39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

Metropolitan Life Insurance Company
PO Box 4232                          00100
Clinton, IA  52733-4232

**MetLife**

January 24, 2025

MET U.S. Retail Life Operations
Metropolitan Life Insurance Company

**POLICY NUMBER:** ▨6197UM
**INSURED:** JOHN E GROVE
**FACE AMOUNT:** $250,000.00
**SCHEDULED/PLANNED** Monthly
**PREMIUM:** $170.00      *(handwritten)* 3,210.06

JOHN E GROVE
2560 WILLOW STREAM DR
QUAKERTOWN PA 18951-3783

*Refer to your original policy for specific coverage details.*

Please pay the amount due. If you have mailed your payment, please disregard this Notice. Please send your payment with the coupon below in the envelope provided. **Please do not send cash or money order.**

Contact your representative to request an illustration, which will provide information on any changes in the premium amount needed to retain your coverage for the desired duration.

Flexible Premium Multifunded Life

## Notice of Required Payment

**Failure to Pay the Premium:** The premium shown on this Notice is payable on the due date shown (or within the grace period) to MetLife or its authorized representative. If the premium due is not paid while the policy is in force (or if a previously due premium is in default), the policy will terminate or lapse, except for the right to reinstate the policy, or any cash surrender value, that may be provided by the policy.

| | |
|---|---|
| **Due Date** | March 26, 2025 |
| **Amount Due** | $6,643.08 |

### Summary as of January 24, 2025

| Activity | Amount |
|---|---|
| Premium Due to Retain Coverage | $6,643.08 |
| **Amount Due** | **$6,643.08** |

You are at risk of losing your valuable life insurance protection. The Cash Surrender Value is not enough to cover the current insurance deductions due.

Based on market volatility, the Cash Surrender Value of your policy may decrease which could cause the payment amount due above to be insufficient when received. That means an additional payment may be required to support the insurance and applicable charges.

After you pay the payment amount due above, you will need to resume premium payments for an amount sufficient to maintain your insurance coverage.

### We're here to help

**Customer Service**
1-833-642-1007
**Your Representative**
MML INVESTORS SERV
SAVAS SAYMAZ



▨6197UM-
RETMAIL-

---

**Detach this slip and return with your payment. Remember to write the policy number on your check.**
**We need your payment by March 26, 2025 to ensure your payment is credited by your next statement.**41

**MetLife**

☐ **Address Change**

Please make check payable to:  Metropolitan Life Insurance Company

**Cash and Money Orders are not acceptable forms of payment.**

| | |
|---|---|
| Policy Number | ▨6197UM |
| Insured Name | JOHN E GROVE |
| Premium Due to Retain Coverage | $6,643.08 |
| **Amount Due** | **$6,643.08** |
| Unscheduled Payment | $ _____ |
| **Amount enclosed** | $ _____ |

METLIFE
PO BOX 71110
CHARLOTTE, NC 28272-1110

4139343533303631393724149999999990003262506000170002508500017000000000000b

Case# 2025-02181-0 - JUDGE:39 Received at County of Bucks Prothonotary on 03/28/2025 2:49 PM, Fee = $283.25. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

# Important information about your notice of required payment

In the following sections, "you" and "your" mean the owner of the policy to whom this Notice of Pending Lapse applies. MetLife, "we" and "us" mean Metropolitan Life Insurance Company.

**Payments made by check** are considered paid when we receive the full amount of the premium MetLife from the collecting bank(s). Checks must be payable in U.S. dollars only. **Please do not send cash or money order.** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, we may withdraw funds from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. **Please note that paying insurance premiums more often than annually (more often than once a year) will cost more than paying them once a year.**

**No Waiver of Prior Default:** This Notice of Overdue Payment doesn't mean that MetLife has waived any default in the payment of a previously due premium on your policy. If a previously due premium is not paid within your policy's grace period, you must reinstate the policy according to the policy's provisions in order to resume premium payments and maintain your insurance protection.

**Unscheduled Payments:** You can make an unscheduled payment as long as the policy is inforce, the insured is living and the unscheduled payment is made before the policy's maturity date. Please note, payments that increase your coverage may require underwriting. An unscheduled payment increases the cash value of your policy. Enter the amount under "Unscheduled Payment" on the return portion of this Notice.  Federal guidelines may limit the amount of your unscheduled payment.

Your policy's cash surrender value as of January 24, 2025 is $336.12.

As an alternative, your policy allows you to reduce your policy's face amount. Please refer to your policy for the face amount reduction rules. While reducing the face amount may lower the premium amount to keep your policy in force today, you will need to continue to pay sufficient premiums to keep your policy in force. The premium amount may increase as you get older. Contact us or your representative to request an inforce illustration.

---

**Change of address: Complete and return this form to make changes to your address.**

| **How to submit this form** |
| :-- |
| **Mail:** |
| Metropolitan Life Insurance Company PO Box 4228 Clinton, IA 52733-4228 |
| **Fax:** 877-319-2495 |

Policy number:▮▮6197UM
Insured: JOHN E GROVE

Address change for:  ☐ Insured       ☐ Payor       ☐ Owner
Street address

▮▮6197UM-ADDCHG-

| City | | State | ZIP |
| :-- | :-- | :-- | :-- |
| | | | |

Case# 2025-02181-3 - JUDGE.39 Received at County of Bucks Prothonotary on 04/03/2025 11:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

**Andrew D. Cotlar, Esq. /Attorney I.D. #204630**
**Law Office of Cotlar & Cotlar**
**23 West Court Street**
**Doylestown, PA 18901**
**(215)-345-7310**
**Andrewdcotlar@gmail.com**

*Attorney for Plaintiff*

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL ACTION - LAW

| | | |
|---|---|---|
| **John E. Grove,** | : | **NO. 2025-02181** |
| *Plaintiff* | : | |
| **VS.** | : | |
| | : | |
| **MML Investors Services LLC,** | : | **CIVIL ACTION – LAW** |
| **and Massachusetts Mutual Life Insurance** | : | |
| **Company** | | |
| *Defendant* | : | |
| | : | |

AFFIDAVIT OF SERVICE BY MAIL

I, Andrew Cotlar, certify that on March 31, 2025, Defendant Massachusetts Mutual Life
Insurance Company was served with a copy of the complaint in the above captioned case via
certified mail, addressed as follows:

Massachusetts Mutual Life Insurance Company
1295 State St., C410
Springfield, MA 01111

     via certified mail return receipt requested

A copy of the cover letter and certified mail receipts is attached. I verify that the statements
made in the foregoing document are true and correct to the best of my knowledge, information,
and belief. I understand that false statements herein are made subject to the penalties set forth in
18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities.

*Andrew Cotlar*

Andrew Cotlar

Case# 2025-02181-3 - JUDGE:39 Received at County of Bucks Prothonotary on 04/03/2025 11:27 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: ANDREW D COTLAR, ESQ.

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Massachusetts Mutual Life<br>Insurance Company<br>1295 State St. C410<br>Springfield, MA 01111<br><br>JJ-137 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>MAR 31 2025 |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 8093 2349 3975 00 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ ____ Mail<br>☐ ____ Mail Restricted Delivery (500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>9589 0710 5270 1163 3610 97 | |
| PS Form 3811, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |

Case# 2025-02181-3 - JUDGE.39 Received at County of Bucks Prothonotary on 04/03/2025 11:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 4.95

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $ 4.10
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$ 2.87

Total Postage and Fees
$ 11.82

Sent To
*Massachusetts Mutual Life Insurance Co.*
Street and Apt. No., or PO Box No.
*1295 State St. C410*
City, State, ZIP+4®
*Springfield, MA 01111*

PS Form 3800, January 2023 PSN 7530-02-000-9047        See Reverse for Instructions

9589 0710 5270 1163 3610 97

Case# 2025-02181-3 - JUDGE.39 Received at County of Bucks Prothonotary on 04/03/2025 11:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
E-Filed by: ANDREW D COTLAR, ESQ.

LAW OFFICES

# *Cotlar & Cotlar*

Steven A. Cotlar

Andrew D. Cotlar*

*Also admitted to D.C. Bar

23 West Court Street

Doylestown, Pa.  18901

215-345-7310

610-847-8900

Fax 215-348-4634

www.cotlarlaw.com

andrewdcotlar@gmail.com

March 28, 2025

Massachusetts Mutual Life Insurance Company
1295 State St. C410
Springfield, MA 01111
          VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

          Re:     John E. Grove v. MML Investors Services, LLC and Massachusetts Mutual Life
Insurance Company, Bucks County Court of Common Pleas, docket 2025-02181

Dear Sir or Madam:

This office represents John E. Grove concerning the complaint filed in the above captioned
docket.  The Complaint summarizes the nature of the case.  Kindly refer this to your insurance
carrier immediately.

Sincerely,

Andrew D. Cotlar
ADC:  w/encl

John E. Grove
2560 Willow Stream Dr.
Quakertown, PA 18951

Case# 2025-02181-4 - JUDGE:39 Received at County of Bucks Prothonotary on 04/21/2025 10:32 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents. E-Filed by: Penelope M. Taylor, Esq.

**McCARTER & ENGLISH, LLP**
By:      Penelope M. Taylor, Esq.
Attorney ID No. 325513
1600 Market Street, Suite 3900
Philadelphia, PA  19103
T: (215) 979-3800
F: (215) 988-4316
ptaylor@mccarter.com

*Attorneys for Defendants*
*MML Investors Services, LLC and*
*Massachusetts Mutual Life Insurance*
*Company*

| | | |
|---|---|---|
| JOHN E. GROVE, | : | **COURT OF COMMON PLEAS** |
| | : | **OF BUCKS COUNTY,** |
| *Plaintiff,* | : | **PENNSYLVANIA** |
| v. | : | |
| | : | |
| MML INVESTORS SERVICES, LLC and | : | **NO. CV- 2025-02181** |
| MASSACHUSETTS MUTUAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

### PRAECIPE FOR ENTRY OF APPEARANCE

TO THE PROTHONOTARY/CLERK OF SAID COURT:

Please enter my appearance for Defendants MML Investors Services, LLC and

Massachusetts Mutual Life Insurance Company in the above entitled proceeding.

**McCARTER & ENGLISH, LLP**


By: */s/ Penelope M. Taylor*
Penelope M. Taylor, Esq.
Attorney ID No. 325513
1600 Market Street, Suite 3900
Philadelphia, PA 19103
T: (215) 979-3800
F: (215) 988-4316
ptaylor@mccarter.com

Dated: April 21, 2025

ME1 52848501v.1

Case 2:25-cv-02133-KSM     Document 1-1     Filed 04/29/25     Page 57 of 57

Case #2025-02181

| | |
|---|---|
| Case Number | 2025-02181 |
| Matter Code | |
| Commencement Date | 3/28/2025 2:49:10 PM |
| Last Filing Date | 4/21/2025 |
| Days Open | 28 |
| Case Type | COMPLAINT |
| PFA Number | |
| Caption Plaintiff | GROVE, JOHN E |
| Caption Defendant | MML INVESTORS SERVICES LLC |
| Lis Pendens Indicator | No |
| Status | 1 |
| Judge | BRIAN T. MCGUFFIN |
| Judge Code | 39 |
| Parcel Number | |
| Remarks | COMPLAINT PROFESSIONAL LIABILITY OTHER PROFESSIONAL MONEY DAMAGES with NOTICE TO DEFEND |
| Sealed | No |
| Consolidated | No |
| PFA Indicator | |

## Plaintiffs

| Name | Address | Counsel | Notify | Sequence | ProSe | Status |
|---|---|---|---|---|---|---|
| GROVE, JOHN E | 2560 WILLOW STREAM DRIVE QUAKERTOWN, PA 18951 UNITED STATES | COTLAR, ANDREW D | Yes | 1 | | |

## Defendants

| Name | Address | Counsel | Notify | Sequence | ProSe | Status |
|---|---|---|---|---|---|---|
| MML INVESTORS SERVICES LLC | 220 GIBRALTAR RD SUITE 350 HORSHAM, PA 19044 UNITED STATES | Taylor, Penelope M. | Yes | 1 | | |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY | 1295 STATE STREET, C410 SPRINGFIELD, MA 01111 UNITED STATES | Taylor, Penelope M. | Yes | 2 | | |

## Docket Entries

| Seq. | Filing Date | | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|
| 0 | 3/28/2025 2:49:10 PM | E | COMPLAINT PROFESSIONAL LIABILITY OTHER PROFESSIONAL MONEY DAMAGES with NOTICE TO DEFEND | No | 13904353 |
| 1 | 4/1/2025 9:04:24 AM | | RECEIVED IN SHERIFF'S OFFICE FOR SERVICE. TRANSACTION # 2025 1 04571 AMOUNT PAID $100.00 | No | 13906313 |
| 2 | 4/1/2025 9:04:51 AM | | DEPUTIZED SHERIFF OF (46) MONTGOMERY COUNTY TO SERVE MML INVESTORS SERVICES LLC $60.00 ENCLOSED. | No | 13906359 |
| 3 | 4/3/2025 11:27:58 AM | E | AFFIDAVIT OF SERVICE BY MAIL BY PLTF FOR COMPLAINT SERVED VIA CERTIFIED MAIL UPON DEFT MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY ON 3/21/25 | No | 13909513 |
| 4 | 4/21/2025 10:32:04 AM | E | ENTRY OF APPEARANCE OF PENELOPE M. TAYLOR ESQ., ENTERED FOR DEFTS | No | 13922076 |

## Transaction History

| Date | Receipt# | Type | Total | Note |
|---|---|---|---|---|
| 3/28/2025 | 2025-99-07275 | Transaction | $283.25 | |